# IMMIGRATION AND NATURALIZATION
# SERVICE *v.* ABUDU

No. 86–1128.   Argued December 1, 1987—Decided March 1, 1988

STEVENS, J., delivered the opinion of the Court, in which all other Members joined, except KENNEDY, J., who took no part in the consideration or decision of the case.

*Robert H. Klonoff* argued the cause for petitioner. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Wallace,* and *Marshall Tamor Golding.*

*Dorothy A. Harper* argued the cause and filed a brief for respondent.*

---

*Briefs of *amici curiae* urging affirmance were filed for the American Immigration Lawyers Association by *Robert D. Baizer;* and for Centro Presente, Inc., et al. by *Alan J. Rom* and *Robert Rubin.*

*Arthur C. Helton* filed a brief for the Lawyers Committee for Human Rights as *amicus curiae.*

JUSTICE STEVENS delivered the opinion of the Court.

Regulations promulgated by the Attorney General authorize deportable aliens to file motions to reopen their deportation proceedings to request asylum on the basis of newly discovered evidence. Denials of such motions are subject to judicial review in the United States courts of appeals. The question in this case is whether those courts should review such Board of Immigration Appeals (BIA) denials under an abuse-of-discretion standard, as petitioner contends, or under the strict standard that would be applied when passing on a motion for summary judgment, as the Court of Appeals held. 802 F. 2d 1096 (CA9 1986). Consistently with our prior cases confirming the BIA's broad discretion in considering motions to reopen, we conclude that the abuse-of-discretion standard applies and therefore reverse the judgment of the Court of Appeals.

I

Respondent, a native and citizen of Ghana, first entered the United States in 1965 as a student. While attending medical school in 1973, he spent his summer vacation in Ghana, and then reentered the United States on a student visa that authorized him to remain until 1976. After becoming a licensed physician, he married an American citizen and overstayed his visa. In 1981, he pleaded guilty to charges of attempting to obtain narcotic drugs (Demerol) by fraud. In due course, deportation proceedings were initiated, and respondent designated England as the country of deportation if necessary and expressly declined to seek asylum as a refugee. On July 1, 1982, the Immigration Judge ordered him deported,[1] and on August 14, 1984, the BIA dismissed his appeal.

---

[1] Respondent had declined to apply for asylum, but had argued instead that his marriage to a United States citizen made him eligible for an adjustment of status under 8 U. S. C. § 1255(a). The Immigration Judge denied the adjustment-of-status application, App. to Pet. for Cert. 28a, because respondent's drug conviction constituted a nonwaivable ground of exclud-

Respondent filed a petition for review in the Court of Appeals for the Ninth Circuit. While that petition was pending, on February 1, 1985, respondent filed a motion with the BIA requesting a reopening of his deportation proceeding to enable him to apply for asylum and a withholding of deportation. In that motion, which was supported by affidavits and other exhibits, respondent claimed that he had a well-founded fear that if England did not accept him and he was returned to Ghana, his life and freedom would be threatened by the regime in power. His fear was based largely on the facts that after the current government seized power in 1981, it had carried out a systematic campaign of persecution against its political enemies and that respondent's brother and certain close friends were among the targets of that campaign. Moreover, in 1984, respondent had received an unsolicited and surprise visit from a former acquaintance who had become a high official in the Ghana government. The visitor invited respondent to return to Ghana, ostensibly because qualified physicians are in short supply, but respondent concluded that his visitor actually wanted to entice him to return in order to force him to disclose the whereabouts of his brother and other enemies of the government.

The BIA first stated the standard for granting motions to reopen deportation proceedings in cases such as this:

"A motion to reopen deportation proceedings for the purpose of applying for asylum or withholding of deportation will only be granted where prima facie eligibility for such relief has been established and where the alien has reasonably explained his failure to assert the claim prior to completion of the deportation hearing. 8 CFR § 208.11. . . . Nor will reopening be granted unless the evidence sought to be offered is material, was not available, and could not have been discovered or presented at

---

ability, 8 U. S. C. § 1182(a)(23) (1982 ed., Supp. IV), and the BIA affirmed this determination, App. to Pet. for Cert. 24a.

the time of the original hearing.   8 CFR §§ 3.2, 103.5, 242.22 . . . ."   App. to Pet. for Cert. 15a.

The BIA then denied respondent's motion to reopen on both § 208.11 and prima facie case grounds, either of which would have sufficed.   First, it held that respondent had not reasonably explained his failure to request asylum prior to the completion of the deportation proceedings, as required by Immigration and Naturalization Service (INS or Agency) regulations.[2]   In support of this holding, the BIA noted that the Immigration Judge had continued the deportation hearing from November 10, 1981, until April 29, 1982, to give respondent an opportunity to apply for asylum, but that respondent had expressly declined to do so, and further, that all of the facts set forth in the motion—except for the surprise visit in 1984—had been available to respondent· at the time of the hearing.   With respect to the visit, the BIA observed that "the respondent's visitor was admittedly a long-time friend of the respondent's who in fact may have been paying a purely social visit."   App. to Pet. for Cert. 17a.

Second, the BIA also held that the facts set forth in the motion to reopen did not show either a clear probability of persecution within the meaning of § 243(h) of the Immigration and Nationality Act (Act), 66 Stat. 214, as amended, 8

---

[2] Title 8 CFR § 208.11 (1987) provides in part:

"[A motion to reopen to request asylum] must reasonably explain the failure to request asylum prior to the completion of the exclusion or deportation proceeding.   If the alien fails to do so, the asylum claim shall be considered frivolous, absent any evidence to the contrary."

Title 8 CFR § 3.2 (1987) provides in part:

"Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted . . . unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing."

U. S. C. § 1253(h),[3] or that respondent was eligible for asylum as a "refugee," see 8 U. S. C. § 1101(a)(42), under § 208 of the Act, 8 U. S. C. § 1158.[4] In support of this holding, the BIA noted that no affidavit from his brother had been

---

[3] See *INS* v. *Stevic*, 467 U. S. 407 (1984) (mandatory withholding of deportation under § 243(h) only if alien can establish that his "life or freedom would be threatened" on account of race, religion, political opinion, etc.). Although respondent moved for reopening to apply for both asylum and withholding of deportation, Motion to Reopen to Permit Respondent to Apply for Asylum and Request Withholding of Deportation in No. 86–7075 (CA9), p. 1 (pp. 14–19 of Pleadings of the Record), the focus throughout the proceedings has been on the asylum application, and our discussion will maintain the same focus. This focus should not obscure the fact that our holding today applies to BIA reopening decisions regarding both asylum and withholding of deportation requests. · First, the standard for granting reopening under 8 CFR § 3.2 (1987) is the same for both asylum and withholding of deportation requests; accordingly, the BIA's determination regarding whether "evidence sought to be offered [on reopening] is material and was not available and could not have been discovered or presented at the former hearing," *ibid.*, is subject to an abuse-of-discretion standard of review regardless of the underlying substantive claim asserted by the alien. Further, since all asylum requests "made after the institution of exclusion or deportation proceedings . . . shall also be considered as requests for withholding exclusion or deportation pursuant to section 243(h) of the Act," 8 CFR § 208.3(b) (1987); since, normally, "the relevant evidence will be identical on both claims," 802 F. 2d 1096, 1102 (CA9 1986) (case below), see *Matter of Mogharrabi*, Interim Dec. No. 3028, p. 12 (BIA June 12, 1987) ("[T]he core of evidence and testimony presented in support of the asylum and withholding applications will in almost every case be virtually the same"); and since it is easier to prove well-founded fear of persecution than clear probability of persecution, the BIA's application of 8 CFR § 208.11 (1987), which on its face applies only to asylum requests on reopening, will also usually be dispositive of its decision whether to reopen to permit a withholding of deportation request. In sum, our holding today is that a court of appeals should review the BIA only for abuse of discretion when the Board denies reopening on § 3.2 or § 208.11 grounds, regardless of the underlying basis of the alien's request. See n. 10, *infra*.

[4] See *INS* v. *Cardoza-Fonseca*, 480 U. S. 421 (1987) ("well-founded fear of persecution" contains subjective and objective components, but does not require proof that persecution is more likely than not to occur if alien is deported).

offered, and that there was no satisfactory explanation of the details of respondent's relationship with the enemies of the government or the reasons why that relationship might lead to his persecution. The BIA concluded that his conjectures about probable threats were too speculative to constitute a prima facie showing of eligibility for either asylum or withholding of deportation.

When respondent petitioned for review of the order denying his motion to reopen, the Court of Appeals consolidated that petition with his pending petition to review the original order of deportation. The court affirmed the deportation order,[5] but reversed the order denying the motion to reopen and remanded for an evidentiary hearing on the asylum and withholding of deportation claims. In support of the latter holding, the court began by noting that although the BIA has "wide discretion" to deny motions to reopen, and although such denials are normally reviewed only for "abuse of discretion," in this case "the sole issue" was whether respondent had "presented a *prima facie* case for reopening." 802 F. 2d, at 1099–1100. The court stated that "[w]hen the Board restricts its decision [refusing to reopen] to whether the alien has established a *prima facie* case it is only this basis for its decision that we review." *Id.*, at 1100 (internal quotation omitted). The court then reasoned:

> "Upon motion to reopen, the Board must draw reasonable inferences from the facts in favor of the petitioner. A motion to reopen is analogous to a motion for summary judgment; each is accompanied by affidavits and other evidentiary material and may be granted if the motion presents 'proof that will support the desired findings [of a prima facie case] . . . until it is contradicted or overruled by other evidence.' *Maroufi* v. *INS*, 772 F. 2d 597, 599 (9th Cir. 1985). In both cases, inferences are to

---

[5] Respondent did not cross-petition for a writ of certiorari from this holding.

be drawn in favor of the party whose entitlement to further proceedings is at stake: the non-moving party under Fed. R. Civ. P. 56 and the alien seeking reopening under 8 CFR 3.2. See, *e. g., U. S.* v. *Diebold, Inc.,* 369 U. S. 654, 655 (1962) ('choice of inferences to be drawn from the subsidiary facts contained in the affidavits . . . submitted [is inappropriate]. On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.') . . .

"[F]or purposes of the limited screening function of motions to reopen, the BIA must draw all reasonable inferences in favor of the alien unless the evidence presented is 'inherently unbelievable.' *Hernandez-Ortiz* [v. *INS*], 777 F. 2d [509,] 514 [CA9 1985].

.        .        .        .        .

"While the visit from the Ghanian official could be viewed as benign, it could also be viewed, as Dr. Abudu suggests, as threatening. Viewing the inferences in favor of the petitioner as we must, we conclude that the affidavits made out a prima facie case of well-founded fear of persecution." *Id.,* at 1101–1102 (citations omitted).

Although the BIA had denied respondent's motion to reopen *both* on the ground that he had failed to make out a prima facie case for asylum *and* on the ground that he had failed to explain reasonably his decision not to request asylum in the first instance, and although the Government had contended in the Court of Appeals that "petitioner *neither* offered a reasonable explanation for the belatedness of his application for asylum and withholding of deportation *nor* made a prima facie showing of entitlement to such relief," Brief for Respondent in Nos. 84–7686 and 86–7075 (CA9), p. 16 (emphasis added), the Court of Appeals did not discuss, as a separate matter, the "failure to explain" ground in the BIA's decision. The Court of Appeals' statement that "the

sole issue [in this case] is whether petitioner presented a *prima facie* case for reopening," 802 F. 2d, at 1100, reveals that the court seems to have blended the two grounds into one.[6]

The petition for certiorari described this case as involving "the extent to which a reviewing court is required to defer to the BIA's ruling on a motion to reopen deportation proceedings." Pet. for Cert. 8. Like the Court of Appeals' opinion, the questions presented, though, did not clearly separate the two grounds upon which the BIA had denied respondent's motion to reopen,[7] and respondent reported to us, incor-

---

[6] Early in its opinion, the Court of Appeals did state, correctly, that the BIA had denied reopening both because of respondent's failure to explain the belated asylum application and because of his failure to make out a prima facie showing for asylum relief. 802 F. 2d, at 1099. The Court of Appeals later commented:    .

"The Board incorrectly found that all the considerations upon which Dr. Abudu relied in making his asylum and prohibition against deportation claims were in existence at the time he made the determination not to apply for such relief." *Id.*, at 1102.

This statement was erroneous. The Board's actual finding was:

"We are satisfied from a careful review of the record that the respondent has not reasonably explained his failure to file his application at the hearing. 8 CFR § 208.11; *Matter of Escobar*, 18 I&N Dec. 412 (BIA 1979). He was aware at the time of the hearing of the problems which his brother and other associates were allegedly facing, yet apparently those considerations did not then prompt him to seek asylum. Now, in seeking reopening, he relies heavily on those same considerations. Given that so much of the evidence upon which the respondent now bases his persecution claim was available at the time of the hearing, we are not persuaded that the visit by a member of the present government was by itself so alarming that it explains the respondent's failure to apply for asylum at the hearing." App. to Pet. for Cert. 17a.

It may be that the Court of Appeals' confusion regarding the BIA's holding led to its addressing the two separate grounds on which the BIA had relied as if they were one.

[7] "QUESTIONS PRESENTED

"1. Whether a decision by the Board of Immigration Appeals (BIA) denying an alien's motion to reopen deportation proceedings on the ground

rectly, that "the sole question before the Ninth Circuit was whether the Respondent had established a prima facie case of a well founded fear of persecution." Brief in Opposition 20. Petitioner's reply memorandum, though, eliminated any possible doubts about the issue it was asking us to resolve:

"[T]he important question for present purposes [is] whether the BIA correctly found that respondent had not offered significant new evidence and had not adequately explained his previous failure to seek asylum or withholding of deportation (see 8 CFR 3.2, 208.11)." Reply Memorandum for Petitioner 2, n. 2.[8]

that the alien did not make a prima facie showing of entitlement to relief must be affirmed if it is plausible and not arbitrary.

"2. Whether the BIA, in ruling on an alien's motion to reopen deportation proceedings, is required to draw all reasonable inferences in favor of the alien." Pet. for Cert. (I).

[8] Thus, this case comes to us in a different posture than did *INS* v. *Stevic*, 467 U. S. 407 (1984). There, the BIA had issued an opinion denying reopening to the alien movant on alternative grounds similar to those relied upon by the BIA in today's case. That is, the BIA in *Stevic* had held (1) that Stevic had failed to show that the new evidence was unavailable at the initial deportation hearing, and thus could not overcome the threshold of 8 CFR § 3.2 (1987), and (2) that Stevic had "failed to submit prima facie evidence" of the substantive ground on which he sought relief (that his freedom would be threatened upon return to Yugoslavia on account of his political opinion). *INS* v. *Stevic, supra,* at 411, and n. 3. The Court of Appeals in *Stevic* held that a change in the law between Stevic's initial deportation hearing and his motion to reopen had changed the legal standard for the underlying substantive claim, and thus that Stevic was entitled to a hearing under the new, more lenient standard. We reversed, holding that the standard for gaining mandatory withholding of deportation under § 243(h) had not been altered by the Refugee Act of 1980. See n. 3, *supra.* Thus, although the BIA had relied upon alternative grounds in *Stevic* similar to those it relied upon in respondent's case—and accordingly one could suggest that we should decide the underlying substantive issue here just as we did in *Stevic*—the crucial difference between the two cases is that in *Stevic* the issue whether sufficient new evidence was available to require reopening depended upon a determination whether the underlying substantive standard for withholding of deportation had been altered, while in today's case the issue whether respondent reasonably explained his

Thus, we granted certiorari, 480 U. S. 930 (1987), not to decide the substantive issues of what constitutes a prima facie case for establishing eligibility for asylum on the basis of a well-founded fear of persecution, or of what standard of review applies, either initially or on motion to reopen, when the BIA rests its grant or denial of relief squarely on prima facie case grounds,[9] but rather to determine the standard a Court of Appeals must apply when reviewing the BIA's conclusion that an alien has not reasonably explained his failure to assert his asylum claim at the outset.

## II

There are at least three independent grounds on which the BIA may deny a motion to reopen. First, it may hold that the movant has not established a prima facie case for the underlying substantive relief sought. The standard of review of such a denial is not before us today, as we have explained. Second, the BIA may hold that the movant has not introduced previously unavailable, material evidence, 8 CFR § 3.2

---

failure to apply for asylum initially does not so depend upon how one states the underlying substantive standard, but rather may be resolved as an independent matter. Unlike the petition for writ of certiorari and reply memorandum in today's case, which asked us to resolve an issue regarding agency discretion on reopening and not the underlying substantive standard for determining eligibility for asylum, the petition for writ of certiorari in *Stevic*, as well as the brief in opposition and reply memorandum, discussed only the nature of the underlying substantive standard.

[9] Just last Term we stated that "[t]here is obviously some ambiguity in a term like 'well-founded fear' which can only be given concrete meaning through a process of case-by-case adjudication." *INS* v. *Cardoza-Fonseca*, 480 U. S., at 448. The BIA has begun this post-*Cardoza-Fonseca* process of giving meaning to "well-founded fear of persecution." *Matter of Mogharrabi*, Interim Dec. No. 3028, at 9 (after canvassing various approaches taken by Courts of Appeals, adopts general standard set forth by Fifth Circuit in *Guevara Flores* v. *INS*, 786 F. 2d 1242 (1986), cert. denied, 480 U. S. 930 (1987), viz., "that an applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution"). We express no opinion on the BIA's recent formulation.

(1987), or, in an asylum application case, that the movant has not reasonably explained his failure to apply for asylum initially, 8 CFR § 208.11 (1987). (The issues under the two regulations may, of course, both involve the incremental significance of whatever allegedly new evidence is introduced by the movant.) We decide today that the appropriate standard of review of such denials is abuse of discretion. Third, in cases in which the ultimate grant of relief is discretionary (asylum, suspension of deportation, and adjustment of status, but not withholding of deportation), the BIA may leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable explanation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief. We have consistently held that denials on this third ground are subject to an abuse-of-discretion standard. *INS* v. *Rios-Pineda*, 471 U. S. 444 (1985) (suspension of deportation); *INS* v. *Bagamasbad*, 429 U. S. 24 (1976) (adjustment of status).

We have discussed 8 CFR § 3.2 (1987), which is one of the two regulations before us today, in dicta:

> "[Section 3.2] is framed negatively; it directs the Board not to reopen unless certain showings are made. It does not affirmatively require the Board to reopen the proceedings under any particular condition. Thus, the regulations may be construed to provide the Board with discretion in determining under what circumstances proceedings should be reopened." *INS* v. *Jong Ha Wang*, 450 U. S. 139, 144, n. 5 (1981).

This footnote, and our subsequent citations of it, *INS* v. *Rios-Pineda*, *supra*, at 449; *INS* v. *Phinpathya*, 464 U. S. 183, 188, n. 6 (1984),[10] stand for the proposition that the BIA

---

[10] Respondent attempts to distinguish *Jong Ha Wang, Phinpathya*, and *Rios-Pineda*, by arguing that the key standard for determining eligibility for suspension of deportation (whether the deportation would result in extreme hardship to the alien) is itself established at the discretion of the BIA, see 8 U. S. C. §§ 1254(a)(1) and 1103; 8 CFR § 2.1 (1987); *INS*

has discretion to deny a motion to reopen even if the alien has made out a prima facie case for relief; that is, our prior glosses on § 3.2 have served as support for an abuse-of-discretion standard of review for the third type of denial, where the BIA simply refuses to grant relief that is itself discretionary in nature, even if the alien has surmounted the requisite thresholds of prima facie case and new evidence/reasonable explanation.

But even before reaching the ultimate decision on an alien's application for discretionary relief from deportation, or before reaching the point at which mandatory relief is called for in a withholding of deportation case, the BIA's discretion may be called into play regarding the specific, evidentiary requirements of §§ 3.2 and 208.11. That is, in a given case the BIA may determine, either as a sufficient ground for denying relief or as a necessary step toward granting relief, whether

---

v. *Jong Ha Wang*, 450 U. S. 139, 144–146 (1981), whereas the standard for determining eligibility for asylum is determined by statute, see 8 U. S. C. §§ 1158 and 1101(a)(42)(A). Thus, respondent continues, *Jong Ha Wang* and its successor cases are of limited value because they all arose in the suspension of deportation setting, where the BIA's discretion to determine eligibility is greater than it is in the asylum setting. Without commenting on the validity of respondent's conclusion regarding the varying degrees of discretion the BIA may exercise in suspension of deportation and asylum settings, we note that even if respondent's point were correct, it would be irrelevant for purposes of this case. The BIA's regulation that provides for reopening of deportation proceedings, 8 CFR § 3.2 (1987), applies to all motions to reopen, regardless of the underlying substantive basis of the alien's claim. Further, the separate regulation relied on by the BIA in denying respondent's motion to reopen, 8 CFR § 208.11 (1987), addresses not the underlying substantive standard for an asylum claim, but rather the additional threshold an alien must overcome on a motion to reopen to make such a claim. As we are simply defining the standard a court of appeals must apply in reviewing the BIA's denial of reopening on §§ 3.2 and 208.11 grounds—and not the standard for establishing eligibility for asylum, whether initially or on motion to reopen—whatever distinction may exist regarding the BIA's discretion in determining eligibility for suspension of deportation and for asylum does not affect the question we address today. See n. 3, *supra*.

the alien has produced previously unavailable, material evidence (§ 3.2), and, in asylum cases, whether the alien has reasonably explained his or her failure to request asylum initially (§ 208.11). We hold today that such decisions are subject to an abuse-of-discretion standard of review.

The reasons why motions to reopen are disfavored in deportation proceedings are comparable to those that apply to petitions for rehearing,[11] and to motions for new trials on the basis of newly discovered evidence.[12] There is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases. The relevance of this interest to deportation proceedings was pointedly explained in an opinion that we recently quoted with approval:

---

[11] See, e. g., Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U. S. 281, 294–296 (1974) (reopening of Interstate Commerce Commission licensing hearing only "in the most extraordinary circumstances"); Cities of Campbell v. FERC, 248 U. S. App. D. C. 267, 278, 770 F. 2d 1180, 1191 (1985) (reopening of Federal Energy Regulatory Commission evidentiary hearing "a matter of agency discretion, . . . reserved for extraordinary circumstances"); Duval Corp. v. Donovan, 650 F. 2d 1051, 1054 (CA9 1981) (reconsideration of Federal Mine Safety and Health Review Commission order "addressed to that body's discretion" and "[d]enial of such a petition should be overturned only upon a showing of the clearest abuse of discretion"); Nance v. EPA, 645 F. 2d 701, 717 (CA9) ("The administrative process cannot provide for the constant reopening of the record to consider new facts, . . . and it is for the agency, not this court to determine when such reopening is appropriate, unless the failure to reconsider can be characterized an abuse of discretion"), cert. denied sub nom. Crow Tribe of Indians, Montana v. EPA, 454 U. S. 1081 (1981).

[12] See, e. g., United States v. Tucker, 836 F. 2d 334, 336 (CA7 1988) (new trial only if newly discovered evidence "would probably lead to an acquittal in the event of a trial"); United States v. Vergara, 714 F. 2d 21, 22 (CA5 1983) ("[S]tandard for review of the denial of a motion for new trial on [grounds of newly discovered evidence] rests in the sound discretion of the trial court"); 3 C. Wright, Federal Practice and Procedure § 557, p. 315 (1982) (motions for new trial on grounds of newly discovered evidence "are not favored by the courts and are viewed with great caution").

"'If INS discretion is to mean anything, it must be that the INS has some latitude in deciding when to reopen a case. The INS should have the right to be restrictive. Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case. It will also waste the time and efforts of immigration judges called upon to preside at hearings automatically required by the prima facie allegations[, a requirement not disputed in this case].'" *INS* v. *Jong Ha Wang*, 450 U. S., at 144, n. 5 (quoting from Judge Wallace's dissenting opinion in *Villena* v. *INS*, 622 F. 2d 1352, 1362 (CA9 1980) (en banc) (CA9 companion case to *Jong Ha Wang*).

As we have detailed above, the Court of Appeals in this case purported to decide "whether [respondent] presented a *prima facie* case for reopening." 802 F. 2d, at 1100. In so doing, the Court of Appeals set out a standard for BIA motions to reopen deportation proceedings, see *supra*, at 100–101, that appears to have conflated the quite separate issues whether the alien has presented a prima facie case for asylum with whether the alien has reasonably explained his failure to apply for asylum initially and has indeed offered previously unavailable, material evidence.[13] To the extent that

---

[13] See, *e. g.*, *Aviles-Torres* v. *INS*, 790 F. 2d 1433, 1436 (CA9 1986) (prima facie showing of entitlement to relief and explanation of failure to present evidence earlier are separate elements of reopening motion); *Bahramnia* v. *INS*, 782 F. 2d 1243, 1245 (CA5) (requirements of §§ 3.2 and 208.11 "additional . . . to the establishment of a *prima facie* case of eligibility"), cert. denied, 479 U. S. 930 (1986); *Ananeh-Firempong* v. *INS*, 766 F. 2d 621, 627 (CA1 1985) (§ 3.2 requirement separate from prima facie case requirement); *Duran* v. *INS*, 756 F. 2d 1338, 1340, n. 1 (CA9 1985) (two requirements for reopening to request asylum: prima facie case of eligibility for relief and reasonable explanation for failure to apply initially, under § 208.11); *Samimi* v. *INS*, 714 F. 2d 992, 994 (CA9 1983) ("To justify reopening on the basis of an asylum claim, a petitioner must make a prima facie showing that he is eligible for the relief sought, . . . and explain

the reasoning of the Court of Appeals addresses the issue of reopening rather than the issue of prima facie case for asylum,[14] it is not supported by our cases, and has been consistently rejected by other Circuits and by other panels in the Ninth Circuit.[15] We have never suggested that all ambigu-

his failure to raise the asylum claim in the previous proceeding. 8 CFR §§ 3.2, 208.11 (1983). Somewhat related to this second requirement is the requirement that the petitioner offer new, material evidence that could not have been discovered and presented at the former hearing. 8 CFR §§ 3.2, 103.5, 242.22 (1983)").

[14] As we have stated throughout the opinion, to the extent that the Court of Appeals' reasoning addresses the issue of prima facie case for asylum, we offer no view of its validity, save our observation, *infra*, at 111, that the untimeliness of an asylum claim may be relevant to the BIA's decision as to the prima facie case issue on reopening.

[15] See, *e. g.*, *Torres-Hernandez* v. *INS*, 812 F. 2d 1262, 1264 (CA9 1987) (abuse-of-discretion standard applied to denial of motion to reopen on § 3.2 grounds); *Sakhavat* v. *INS*, 796 F. 2d 1201, 1203 (CA9 1986) (abuse-of-discretion standard applied to denial of reopening on § 208.11 grounds); *Conti* v. *INS*, 780 F. 2d 698, 701 (CA7 1985) (abuse-of-discretion standard applied to denial of reopening on § 3.2 grounds); *Ananeh-Firempong* v. *INS*, *supra*, at 626 (abuse-of-discretion standard applied to denial of motion to reopen in which alien complied with § 3.2 by alleging new facts); *Riasati* v. *INS*, 738 F. 2d 1115, 1119 (CA10 1984) (abuse-of-discretion standard applied to denial of motion to reopen on § 3.2 materiality grounds); *Motamedi* v. *INS*, 713 F. 2d 575, 576 (CA10 1983) (BIA abused its discretion in denying motion to reopen when alien had complied with § 208.11 by reasonably explaining his failure to request asylum initially); *LeBlanc* v. *INS*, 715 F. 2d 685, 689 (CA1 1983) (suggesting that our holding in *INS* v. *Jong Ha Wang*, 450 U. S. 139 (1981), permits the BIA, pursuant to § 3.2, to "decide that it will not reopen in cases such as the one at bar, where the movant may have made out a prima facie case, but the Board is persuaded that for other assertedly legitimate reasons it would not, as a matter of discretion, allow suspension"); *Samimi* v. *INS*, *supra*, at 994–995 (abuse-of-discretion standard applied to denial of reopening on §§ 3.2 and 208.11 grounds); *Chae Kim Ro* v. *INS*, 670 F. 2d 114 (CA9 1982) (abuse-of-discretion standard applied to denial of reopening on § 3.2 grounds); *Au Yi Lau* v. *INS*, 181 U. S. App. D. C. 99, 107, 555 F. 2d 1036, 1044 (1977) ("At most, [§ 3.2] dictates that the Board consider any new circumstances advanced in support of a motion to reopen, and that the Board not abuse its discretion in determining whether the circumstances are sufficient to justify granting of

ities in the factual averments must be resolved in the movant's favor, and we have never analogized such a motion to a motion for summary judgment. The appropriate analogy is a motion for a new trial in a criminal case on the basis of newly discovered evidence, as to which courts have uniformly held that the moving party bears a heavy burden. See, *e. g., Taylor* v. *Illinois*, 484 U. S. 400, 414, n. 18 (1988) (citing cases). Moreover, this is the tenor of the Attorney General's regulations, which plainly disfavor motions to reopen. See n. 2, *supra.* In sum, although all adjudications by administrative agencies are to some degree judicial and to some degree political [16]—and therefore an abuse-of-discretion standard will often apply to agency adjudications not governed by specific statutory commands—INS officials must exercise especially sensitive political functions that implicate questions of foreign relations,[17] and therefore the reasons for giving deference to agency decisions on petitions for reopening or reconsideration in other administrative contexts apply with even greater force in the INS context.

## III

We have no doubt that if respondent had made a timely application for asylum, supported by the factual allegations and exhibits set forth in his motion to reopen, the Immigration Judge would have been required to grant him an eviden-

---

the motion"); see also, *e. g., Brown* v. *INS*, 249 U. S. App. D. C. 333, 337, 775 F. 2d 383, 387 (1985) (abuse-of-discretion standard applied to denial of motion to reopen on § 3.8 grounds due to lack of evidentiary support).

[16] See, *e. g., Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, 458 U. S. 50, 67–70 (1982) (plurality opinion) (Constitution authorizes Congress to delegate adjudication of "public rights" to non-Article III judges); see also *id.*, at 91 (REHNQUIST, J., concurring in judgment) ("public rights" doctrine might sustain other powers granted non-Article III judges under the Bankruptcy Act of 1978, but not the adjudication of appellant's contract suit).

[17] Cf., *e. g., Hampton* v. *Mow Sun Wong*, 426 U. S. 88, 101–102, n. 21 (1976) ("[T]he power over aliens is of a political character and therefore subject only to narrow judicial review").

tiary hearing. See 8 CFR §§ 208.6 (1987) (requiring appearance before immigration officer for asylum application) and 208.10(c) (permitting presentation of evidence in deportation proceedings). We are equally convinced, however, that an alien who has already been found deportable has a much heavier burden when he first advances his request for asylum in a motion to reopen. In passing on the sufficiency of such a motion, the BIA is entitled to attach significance to its untimeliness, both for the purpose of evaluating the probability that the movant can prove his allegations and for the purpose of determining whether the movant has complied with the regulation requiring a reasonable explanation for the failure to request asylum during the deportation proceeding.

In this case we have no hesitation in concluding that the BIA did not abuse its discretion when it held that respondent had not reasonably explained his failure to apply for asylum prior to the completion of the initial deportation proceeding. The surprise visit in 1984 was admittedly an event with uncertain meaning, but it was neither arbitrary nor unreasonable for the BIA to regard it as not providing any significant additional support for a claim that respondent had not previously considered strong enough to prompt him to assert that he had a well-founded fear of persecution.

The portion of the Court of Appeals' judgment that reversed the BIA order denying the motion to reopen is reversed.

*It is so ordered.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.