NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1730
_____

SUJEEPAN PATPANATHAN,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A098-928-109)
Immigration Judge:  Honorable Walter Durling
_____

Submitted Under Third Circuit LAR 34.1(a)
January 14, 2014

Before:  AMBRO, HARDIMAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: February 4, 2014)

_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

Sujeepan Patpanathan petitions for review of the Board of Immigration Appeals'

order denying his motion to reopen his asylum case based on changed circumstances.

Because the BIA did not abuse its discretion in denying the motion, we will deny the petition.

I

Patpanathan and his older brother, Thileepan Patpanathan, both natives of Sri Lanka, entered the United States on fraudulent documents in 2002 and applied for asylum in Canada shortly thereafter. In 2006, the Canadian government denied their asylum petition and returned the brothers to the United States, at which point the Department of Homeland Security (DHS) initiated removal proceedings against them. While those proceedings were pending, the Patpanathans were arrested and charged with bribing a U.S. immigration official in an attempt to prevent their removal. In June 2007, the brothers pleaded guilty to the bribery charge and were sentenced to time served and supervised release. Removal proceedings began again, and the brothers applied for asylum and withholding of removal pursuant to the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1158, 1231(b)(3), and for relief under Article III of the Convention Against Torture (CAT), 8 C.F.R. § 1208.16(c)(2).

In early 2008, Judge Walter Durling of the U.S. Immigration Court in York, Pennsylvania, denied the brothers' INA asylum and withholding of removal requests based on the bribery conviction and what he deemed their lack of credibility due to inconsistencies between their testimony to U.S. officials and their Canadian refugee claims. However, the Immigration Judge (IJ) granted CAT relief, finding that the Sri Lankan government would likely torture the brothers if they were returned because of its

mistaken belief that they belonged to the Tamil Tigers, a separatist terrorist organization

and the government's primary nemesis. On appeal, the BIA affirmed the grant of CAT

relief, but remanded the INA claims for further consideration. Although the BIA

affirmed the IJ's adverse credibility determination as not "per se, clearly erroneous," it

held that "an adverse credibility finding does not, in this instance, categorically foreclose

the availability of asylum or withholding of removal." The BIA asked the IJ to consider

whether the brothers had established a well-founded fear of persecution and warranted

asylum as a matter of discretion or qualified for withholding of removal.

At some point after the BIA remand, the Patpanathans withdrew their applications

for asylum.[1] The brothers averred that they acted based on the advice of their attorney at

the time and did so unaware of the effects of withdrawing their asylum claims. In his

motion to reopen, Sujeepan stated that he sought release from detention to work and help

support his recently widowed mother, who was living in India and had no source of

income. He further stated that his attorney told him that if he proceeded with the asylum

claim, DHS would "definitely appeal the decision" and that he might end up languishing

in detention.[2]

---

[1] When this occurred is not entirely clear based on the record, although documents indicate that it happened no more than two weeks before the IJ's decision. On September 18, 2008, the brothers' attorney at the time filed a pre-hearing brief arguing that they easily met the INA standards for both asylum and withholding of removal. The IJ rendered his decision exclusively on withholding of removal grounds on October 2, 2008.

[2] Sujeepan Patpanathan argues that he did not knowingly and voluntarily withdraw his asylum claim and waive his appeal in the previous proceeding, and he attributes this to

3

On October 2, 2008, the IJ granted the brothers withholding of removal. The IJ did not issue a written opinion, but did fill out a disposition sheet. On the disposition sheet the boxes that follow the phrase "Asylum was," which give the IJ the option of checking "granted," "denied," or "withdrawn," are empty. The sheet also indicates that DHS and the brothers agreed to waive their appeals.

Dropping the asylum claims had consequences for both brothers: although applicants granted withholding of removal and applicants granted asylum are allowed to remain in the United States,[3] only those who win asylum can apply for lawful permanent residence and petition to bring eligible family members to the U.S.[4] But the distinction carried heavier ramifications for Thileepan, whose wife and children were still abroad, than for Sujeepan, who was single. Consequently, in August 2011 Thileepan—with a new attorney—filed a motion with Judge Durling to reopen his asylum case based on

his previous attorney's advice. However, he does not raise an ineffective assistance of counsel claim here. *See, e.g.*, *Fadiga v. Att'y Gen.*, 488 F.3d 142, 155 (3d Cir. 2007) (explaining requirements for making a claim of ineffective assistance in a removal proceeding).

[3] "Although withholding of removal (a.k.a. restriction on removal) only prevents removal to the specified country and does not preclude removal to a third country, commentators have noted that '[i]n practice, however, non-citizens who are granted restrictions on removal are almost never removed from the U.S.'" *Kumarasamy v. Att'y Gen.*, 453 F.3d 169, 171 n.1 (3d Cir. 2006) (quoting David Weissbrodt & Laura Danielson, *Immigration Law and Procedure* 303 (5th ed. 2005)).

[4] *See, e.g.*, U.S. Citizenship and Immigration Services, Instructions for Form I-589, Application for Asylum and Withholding of Removal.

family reunification and changed circumstances, consisting of new evidence of persecution of returned asylum seekers in Sri Lanka. The Government did not respond to the motion, so Judge Durling granted the motion without considering the merits. DHS then filed a motion to change the venue to Philadelphia, which Judge Durling granted. In Philadelphia, IJ Steven Morley considered Thileepan Patpanathan's asylum application on the merits and granted it in a thorough opinion dated July 23, 2012.

In the wake of Thileepan's success, Sujeepan also filed a motion to reopen his asylum case. His September 2012 motion was prepared by the same attorney who handled his brother's motion to reopen; minus the family reunification aspect, it consisted of essentially the same argument on changed country conditions (verbatim, in parts) and was accompanied by the same supporting documents, plus others not included with Thileepan's motion. Unlike in Thileepan's case, however, the Government opposed Sujeepan's motion, and Judge Durling denied it.

In his opinion, Judge Durling declined to consider the substance of Sujeepan's changed circumstances argument and instead held that

> Given respondent's serious criminal record in the United States, as well as his intentional efforts at providing materially misleading testimony in pursuit of his previous asylum application, the court would deny asylum in the exercise of discretion.

The BIA affirmed, stating that it agreed with Judge Durling's "decision to deny the respondent's motion to reopen as a matter of discretion." Specifically, the BIA held that Sujeepan Patpanathan had not carried his burden to establish that he was eligible for the

5

relief he requested and that it should be granted in the exercise of discretion. It further stated that Patpanathan's bribery conviction and the IJ's adverse credibility finding were a proper basis to deny the motion as a matter of discretion, and faulted Patpanathan for not proffering "positive factors that would outweigh his serious criminal history." The BIA also said it did not consider Judge Morley's discretionary analysis from Thileepan's proceedings "to be evidence of [Sujeepan's] equities." It concluded by citing *Matter of Edwards*, 20 I&N Dec. 191, 196 (BIA 1990), for the proposition that "even in cases where positive equities are shown, a grant of discretionary relief may be denied given the presence of serious adverse factors."). This timely appeal followed.[5]

## II

An alien may file a motion to reopen his removal proceedings pursuant to 8 U.S.C. § 1229(c)(7). The motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229(c)(7)(B). It must be filed within 90 days of the final administrative order in the case unless, like Patpanathan's motion, it seeks relief based on changed country conditions. 8 U.S.C. §1229(c)(7)(C). "The decision to grant or deny a motion to reopen . . . is within the discretion of the Immigration Judge," and the IJ "has the discretion to deny a motion to reopen even if the moving party has established a prima

---

[5] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b). We have jurisdiction to review the BIA's decision under 8 U.S.C. § 1252. *See Kucana v. Holder*, 558 U.S. 233 (2010).

facie case for relief." 8 C.F.R. § 1003.23(b)(1)(iv), (b)(3).

"There are at least three independent grounds on which the BIA may deny a motion to reopen." *I.N.S. v. Abudu*, 485 U.S. 94, 104 (1988). First, the Board "may hold that the movant has not established a prima facie case for the underlying substantive relief sought." *Id*. Second, the Board "may hold that the movant has not introduced previously unavailable, material evidence" or, in an asylum case, "has not reasonably explained his failure to apply for asylum initially." *Id*. at 104–05. Finally, "in cases in which the ultimate grant of relief is discretionary," including asylum cases, "the BIA may leap ahead . . . over the [first two] concerns . . . and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." *Id*. at 105.

The BIA's decision in this case rests on the third ground, and we review for abuse of discretion.[6] *Id*. "Discretionary decisions of the [Board] will not be disturbed unless they are found to be arbitrary, irrational, or contrary to law." *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004). "The BIA's underlying factual determinations are entitled to broad deference under the substantial evidence standard, 'and will be upheld to the extent [they are] supported by reasonable, substantial and probative evidence on the record as a whole.'" *Khan v. Att'y Gen.*, 691 F.3d 488, 496 (3d Cir. 2012) (quoting *Shardar v.*

---

[6] In general, "because the BIA has the power to conduct a *de novo* review of IJ decisions . . . the 'final order' we review is that of the BIA." *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). When the BIA issues a separate opinion, we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA defers to it. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006).

*Ashcroft*, 382 F.3d 318, 323 (3d Cir. 2004)).

Patpanathan argues that the BIA abused its discretion in denying his motion to reopen because the Board—and, because it largely adopts his opinion in this respect, the IJ—failed to balance positive and negative factors weighing for and against a discretionary grant of asylum, as required by law, when it denied the motion based on the adverse credibility determination and conviction. He also argues that as part of that analysis, the Board erroneously concluded he had not cited positive factors.[7]

A

The Attorney General has discretion to grant asylum to an alien who qualifies as "a refugee." 8 U.S.C. § 1158(b)(1)(A). Thus, by its nature, a grant of asylum necessarily involves two steps: determining whether an alien qualifies as a refugee,[8] and deciding

---

[7] Patpanathan also raises several other issues, but they are not relevant to the disposition of this appeal. He argues that the IJ's adverse credibility determination was not supported by substantial evidence; however, in the initial proceedings in this case, the BIA upheld the adverse credibility finding, and Patpanathan did not challenge that ruling. To that end, as mentioned above, he argues that his failure to appeal was not knowing and voluntary because of his attorney, but does not raise an ineffective assistance claim. Finally, due to the procedural posture of this case, we find no conflict between the BIA's opinion on the motion to reopen and its 2008 ruling remanding Patpanathan's case to the IJ on the ground that an adverse credibility determination "does not . . . categorically foreclose the availability of asylum." A23.

[8] An individual is a refugee if he is "unable or unwilling" to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Our "non-exclusive list of examples of persecution 'include[s] threats to life, confinement, [and] torture.'" *Cheng v. Att'y Gen.*, 623 F.3d 175, 192 (3d Cir. 2010) (quoting *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993)). Although the parties do not consider this question here, Patpanathan must have previously credibly

whether the applicant merits a favorable exercise of discretion. *See Dankam v. Gonzales*, 495 F.3d 113, 120 (4th Cir. 2007) (citing *Krastev v. I.N.S.*, 292 F.3d 1268, 1270–71 (10th Cir. 2002)). The BIA denied Patpanathan's motion based on the second step.

In the asylum context, "discretion" does not mean "unfettered discretion." "Recognizing the special nature of asylum cases, the BIA has established—and federal courts have enforced—extensive limitations on an IJ's exercise of discretion in the context of asylum-eligible refugees." *Huang v. I.N.S.*, 436 F.3d 89, 97 (2d Cir. 2006) (collecting cases). Unless there is a statutory bar to eligibility, such as that the applicant presents a danger to national security or has previously persecuted others, *see* 8 U.S.C. § 1158(b)(2), "the immigration agency must examine the totality of the circumstances" in determining whether an alien qualifies for a discretionary grant of asylum. *Huang*, 436 F.3d at 98 (citing *In re H-*, 21 I. & N. Dec. 337, 347 (BIA 1996); *In re A-H-*, 23 I. & N. Dec. 774, 782–83 (Att'y Gen. 2005); *In re Chen*, 20 I. & N. Dec. 16, 19 (BIA 1989) ("as with any case involving the exercise of discretion, all other factors, both favorable and adverse, should also be considered, with recognition of the special considerations present in asylum cases.")); *see also Zuh v. Mukasey*, 547 F.3d 504, 511 (4th Cir. 2008).

Some of the favorable factors to consider include family ties to the United States, evidence of hardship to the alien if deported, evidence of good character or value to the community, and general humanitarian reasons. Negative factors can include lack of

---

alleged a fear of torture if returned to Sri Lanka to have qualified for withholding of removal.

9

candor with immigration officials, presence of a criminal record (including the nature, recency, and seriousness of the record and potential for recidivism), and other evidence of bad character or undesirability for permanent residence in the United States. *See, e.g.*, *Huang*, 436 F.3d at 92; *Zuh*, 547 F.3d at 511; *In re H-*, 21 I. & N. Dec. at 347–48; *In re Pula*, 19 I&N Dec. 467, 474 (BIA 1987) (superseded by regulation on other grounds). "There is no definitive list of factors that the BIA must consider or may not consider," but "all relevant favorable and adverse factors must be considered and weighed." *Kalubi v. Ashcroft*, 364 F.3d 1134, 1139 (9th Cir. 2004). The BIA has made clear that in this balancing analysis not all factors are considered equal: "The danger of persecution should generally outweigh all but the most egregious of adverse factors." *In re H-*, 21 I. & N. Dec. at 348. Consequently, "[d]iscretionary denials of asylum are exceedingly rare." *Huang*, 436 F.3d at 92.

B

Here, the BIA concluded that Patpanathan had not proffered any positive factors that would outweigh his criminal history. Patpanathan argues that this was incorrect, as he presented evidence that he had a well-founded fear of being tortured if returned to Sri Lanka—a contention only bolstered by the fact that he had already received withholding of removal in earlier proceedings. He further cites *Huang*, *Kalubi*, and *Zuh* for the proposition that even when an alien's removal to his home country is withheld, the BIA must still consider the danger of persecution as a positive factor in the balancing analysis for asylum.

Although these are colorable arguments, they ignore the unusual procedural posture of this case: It comes to us on a motion to reopen, as opposed to an appeal of an initial adjudication. *Huang*, *Kalubi*, and *Zuh* are all cases in which an alien sought both withholding of removal and asylum and received only withholding. There, the courts remanded for failure to properly weigh the fear of persecution and rejected the idea that receiving withholding of removal—at least, in the same proceeding—renders the danger of persecution irrelevant for purposes of the asylum balancing analysis. *See, e.g.*, *Zuh*, 547 F.3d at 512 n.5. Because an alien must prove a higher likelihood of persecution to obtain withholding than to qualify for asylum, *see, e.g.*, *Ghebrehiwot v. Att'y Gen.*, 467 F.3d 344, 351 (3d Cir. 2006), "[i]f one accepted this position, those very asylum-seekers who met the higher standard of proof of persecution required for withholding of removal (and thus those persons most in need of this nation's asylum relief) would be the ones who received less protection." *Huang*, 436 F.3d at 98 n.11. The import of these cases is that an IJ cannot simultaneously find that an alien has a sufficient fear of persecution to obtain withholding but fail to weigh that fear as a factor in considering whether to grant asylum.

By contrast, Patpanathan withdrew his initial asylum application, *received* withholding of removal, and now seeks to reopen his case to pursue asylum again. Unlike in *Huang*, *Kalubi*, and *Zuh*, where the IJs were considering withholding and asylum applications together, Patpanathan had already received withholding when he moved to

reopen his immigration proceedings, and the IJ and BIA were aware of that.[9] This matters because it speaks to how the IJ and BIA should have considered the danger of persecution as a positive factor that could outweigh the negative factors weighing against Patpanathan's asylum application. Patpanathan argues that the BIA failed to weigh his likelihood of future persecution as a positive, but the likelihood of future persecution was illusory because he had previously received withholding of removal. The BIA appears to have recognized that fact when it wrote that Patpanathan made "no proffer of positive factors" that would outweigh his criminal conviction. The inconsistency that troubled the *Huang*, *Kalubi*, and *Zuh* courts is not present here due to the unusual procedural posture of the case.

Moreover, the record supports the BIA's finding that Patpanathan offered no other positive factors for the court to weigh against the negatives. In a motion to reopen, the alien bears the burden of proving eligibility for the requested relief and must submit documents, affidavits, or other evidentiary in support of the application. 8 C.F.R. § 1003.2(c)(1). Here, Patpanathan's argument in favor of reopening his case rested

---

[9] This is in distinct contrast to most motions to reopen based on changed circumstances, in which "[t]he critical question is . . . whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution." *Khan v. Att'y Gen.*, 691 F.3d 488, 496 (3d Cir. 2012) (quoting *Malty v. Ashcroft*, 381 F.3d 942, 945 (9th Cir. 2004)). Here, the fact that Patpanathan won withholding of removal makes it clear that he *already* had a well-founded fear of future persecution, but the IJ never had the opportunity to rule on that in the asylum context because Patpanathan withdrew his application.

exclusively on the prospect that he would be tortured if returned to Sri Lanka—something that was in no danger of happening due to his earlier success on withholding of removal. He made no mention of, for instance, family ties to the United States or evidence of good character or value to the community, although he did note in passing that in exercising its discretion the court should weigh his apology for his past conduct and desire to have a stable future and possibly achieve citizenship. Thus, the positives he argues the agency failed to balance are a chimera. The BIA must balance positive and negative factors in determining whether asylum is warranted, but it can only balance what the parties present to it—and here, it had almost nothing that favored Patpanathan.

To be sure, the BIA could have explained its rationale more clearly. As we have noted, "there is an inherent tension in the criteria setting forth the standards for the review of BIA decisions that lack detailed discussion" in that the BIA must demonstrate it has considered a petitioner's evidence sufficient for us to "discern its reasons for declining to afford relief," but need not "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Zheng v. Att'y Gen.*, 549 F.3d 260, 268 (3d Cir. 2008) (internal citations and quotation marks omitted). However, based on the decision before us, we cannot say the BIA abused its discretion in denying Patpanathan's motion to reopen. Therefore, we will deny his petition for review.