NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0541n.06

No. 16-4334

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Sep 26, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FATIN GAPPY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| JEFFERSON B. SESSIONS, III, Attorney | ) | APPEALS |
| General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: BOGGS, BATCHELDER, and KETHLEDGE, Circuit Judges.

PER CURIAM. Fatin Gappy petitions this court for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from the denial of her motion to reopen removal proceedings. As set forth below, we deny Gappy's petition for review.

Gappy is a native and citizen of Iraq. In June 1994, after the Gulf War ended, Gappy left Iraq and relocated to Jordan to find a better job. Relatives introduced Gappy to United States citizen Mike Anton, who traveled to Jordan to meet her. They decided to marry, and Anton returned to the United States and filed a petition for a fiancée visa on Gappy's behalf. After the Immigration and Naturalization Service (INS) approved the petition, Gappy entered the United States as a non-immigrant fiancée in December 1996. Gappy and Anton married in a civil ceremony in March 1997. Gappy applied to adjust her status, and the INS granted her conditional permanent resident status based on her marriage to Anton. In March 1998, after one year of marriage, Gappy and Anton were divorced.

Gappy subsequently petitioned for removal of the conditions on her residence and requested a waiver from the joint-filing requirement on the basis that she had entered into the marriage in good faith, but the marriage was terminated. Finding that she had failed to establish that she married Anton in good faith, the INS denied Gappy's petition, declined to waive the joint-filing requirement, and terminated her permanent-resident status.

In June 2001, the INS served Gappy with a notice to appear in removal proceedings, charging her with removability: (1) for termination of her conditional permanent-resident status, *see* 8 U.S.C. § 1227(a)(1)(D)(i); (2) for marriage fraud in that the marriage through which she obtained her admission was entered into less than two years prior to her admission and was terminated within two years after her admission, *see* 8 U.S.C. § 1227(a)(1)(G)(i); and (3) for marriage fraud in that she failed or refused to fulfill her marital agreement which, in the opinion of the Attorney General, was made for the purpose of procuring her admission, *see* 8 U.S.C. § 1227(a)(1)(G)(ii). Gappy denied these charges before an immigration judge (IJ). To avoid removal, Gappy sought review of the INS's denial of a good-faith waiver and filed an application for withholding of removal and protection under the Convention Against Torture, claiming that she would be treated poorly in Iraq because she is a Chaldean Catholic. After a hearing, the IJ denied Gappy's request for a good-faith waiver and found her removable as charged. Pointing out that Gappy and Anton never shared a residence, never consummated the marriage, and had no shared assets or liabilities, the IJ determined that Gappy had failed to rebut the statutory presumption that a marriage terminated within two years after admission is fraudulent and found that she had entered into the marriage for the purpose of obtaining an immigration benefit. The IJ granted Gappy's application for withholding of removal based on current country conditions establishing a pattern and practice of persecution of Iraqi Christians.

Eighteen months later, in July 2008, Gappy filed a motion to reopen her removal proceedings to apply for asylum pursuant to the Refugee Crisis in Iraq Act. Gappy asserted that she was eligible for asylum based on changed country conditions, citing attacks by Islamic extremists against Christians in Iraq and the Iraqi government's inability to protect the Christian minority. The IJ initially granted Gappy's motion to reopen but, after a hearing, reconsidered and denied the motion. The IJ determined that the Refugee Crisis in Iraq Act did not apply to Gappy because she had not been denied relief based on a finding of changed country conditions in Iraq following the ouster of Saddam Hussein. The IJ further found that Gappy had not presented any evidence establishing sufficient equities to overcome the serious adverse consequences of her immigration violations. On appeal, the BIA upheld the denial of Gappy's motion to reopen on the basis that she had failed to establish prima facie eligibility for asylum.

In October 2014, over four years after the BIA's order dismissing her appeal, Gappy filed another motion to reopen her removal proceedings to apply for asylum, asserting that the conditions for Chaldean Christians in Iraq had significantly worsened since 2007 when she was granted withholding of removal. The IJ denied Gappy's motion to reopen. The IJ determined that the persecution of Chaldean Christians was a continuation of ongoing violence in Iraq rather than a material change in country conditions. In the alternative, the IJ found that Gappy had failed to establish that she merited asylum in the exercise of discretion, stating that her marriage fraud was an adverse factor that outweighed the positive factors presented by her. Gappy appealed the IJ's decision to the BIA. Dismissing the appeal, the BIA upheld the IJ's alternative denial on discretionary grounds. Upon consideration of the positive equities acquired by Gappy, the BIA agreed with the IJ that those equities were insufficient to overcome the seriousness of Gappy's sham marriage and false application for adjustment of status. The BIA further observed

that there was no current risk of persecution, given that Gappy had been granted withholding of removal.

This timely petition for review followed. "Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). We review the denial of a motion to reopen for an abuse of discretion. *Bi Feng Liu v. Holder*, 560 F.3d 485, 489 (6th Cir. 2009). We "will find an abuse of discretion if the denial of the motion to reopen 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* at 490 (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)).

In a case "in which the ultimate grant of relief is discretionary," the agency may deny a motion to reopen if "the movant would not be entitled to the discretionary grant of relief." *INS v. Abudu*, 485 U.S. 94, 105 (1988). The discretionary relief of asylum "involves a two-step inquiry: (1) whether the applicant qualifies as a 'refugee' as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant 'merits a favorable exercise of discretion by the Attorney General.'" *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (quoting *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994)). "[T]he applicant 'has the burden of establishing that the favorable exercise of discretion is warranted.'" *Kouljinski v. Keisler*, 505 F.3d 534, 542 (6th Cir. 2007) (quoting *Matter of Pula*, 19 I. & N. Dec. 467, 474 (BIA 1987)). In determining whether a favorable exercise of discretion is warranted, the agency considers the totality of the circumstances. *Id.* If the applicant engaged in fraud in seeking admission or status, "the seriousness of the fraud should be considered." *Matter of Pula*, 19 I. & N. Dec. at 474.

The BIA did not abuse its discretion in upholding the denial of Gappy's motion to reopen on the basis that she had failed to satisfy her burden of establishing that she warranted asylum in the exercise of discretion. In making this determination, the BIA considered all of the equities, including Gappy's long residence in the United States, her ties to her lawful-permanent-resident mother and United States citizen siblings, her employment and tax payment history, her volunteer work, and her role as the primary caregiver for her aging mother. The BIA went on to agree with the IJ that Gappy's equities were "insufficient to overcome the seriousness of her sham marriage and her false application for adjustment of status to remain in the United States." *See Htun v. Lynch*, 818 F.3d 1111, 1121 (10th Cir. 2016) ("[O]ther circuits to address this issue have considered marriage fraud a significant negative factor that supported discretionary denial of asylum."). Because the BIA considered the totality of the circumstances and provided a rational explanation for its decision, we can discern no abuse of discretion.

Gappy argues that the BIA abused its discretion in failing to take administrative notice of the U.S. Department of State Iraq Report on Human Rights Practices for 1996. Gappy contends that this report puts into context her motivation to engage in marriage fraud to evade persecution on account of her Christian religion and that the BIA failed to consider whether the seriousness of her fraud was mitigated by country conditions at that time. But Gappy was not living in Iraq in 1996. Gappy testified that she left Iraq in 1994 because of the general conditions after the First Gulf War and that she had no problems practicing her religion in Iraq. The record does not support her claim that she entered into the sham marriage to evade persecution in Iraq. Furthermore, Gappy is precluded from relitigating the IJ's final determinations that she did not suffer past persecution in Iraq and that she engaged in marriage fraud. *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421-22 (1966).

Gappy also asserts that other circuits have found an abuse of discretion and remanded cases in which the applicant was granted withholding of removal but denied asylum in the exercise of discretion. *See Shantu v. Lynch*, 654 F. App'x 608 (4th Cir. 2016); *Zuh v. Mukasey*, 547 F.3d 504 (4th Cir. 2008); *Huang v. INS*, 436 F.3d 89 (2d Cir. 2006); *Kalubi v. Ashcroft*, 364 F.3d 1134 (9th Cir. 2004); *Andriasian v. INS*, 180 F.3d 1033 (9th Cir. 1999). In those cases, the applicant initially sought both asylum and withholding of removal and received only withholding. Here, Gappy applied for withholding of removal only (an asylum application being untimely), received withholding, and later moved to reopen her removal proceedings to apply for asylum. This procedural posture distinguishes Gappy's case. *See Patpanathan v. Att'y Gen. of the U.S.*, 553 F. App'x 261, 267 (3d Cir. 2014) ("Unlike in *Huang*, *Kalubi*, and *Zuh*, where the IJs were considering withholding and asylum applications together, Patpanathan had already received withholding when he moved to reopen his immigration proceedings, and the IJ and BIA were aware of that. This matters because it speaks to how the IJ and BIA should have considered the danger of persecution as a positive factor that could outweigh the negative factors weighing against Patpanathan's asylum application." (footnote omitted)). The BIA did not abuse its discretion in considering that Gappy faced no current risk of persecution, given that she had been granted withholding of removal.

For these reasons, we **DENY** Gappy's petition for review.