**Charles N. CHADWICK, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 91–1090.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 26, 1991.

Decided Nov. 27, 1991.

Rehearing and Rehearing En Banc Denied Jan. 27, 1992.

Rehearing Denied March 3, 1992.

Bruce L. Cook, Des Moines, Iowa, for appellant.

Thomas D. McGrane, Des Moines, Iowa, for appellee.

Before JOHN R. GIBSON, Circuit Judge, and HEANEY and BRIGHT, Senior Circuit Judges.

HEANEY, Senior Circuit Judge.

Charles N. Chadwick and a co-defendant, John L. Hrbek, were convicted of murdering Kate and Stanley L. Fisher. Following direct appeal, the convictions were affirmed by the Iowa Supreme Court. *State v. Hrbek*, 336 N.W.2d 431 (Iowa 1983); *State v. Chadwick*, 328 N.W.2d 913 (Iowa 1983). Chadwick exhausted available state court remedies.

Chadwick then filed an action for writ of habeas corpus pursuant to 28 U.S.C. § 2254. A federal magistrate's report recommended a denial of the writ, and Chadwick objected to the denial. On November 20, 1990, the district court adopted the report and recommendation of the magistrate. Chadwick appeals these findings and conclusions.

Chadwick contends that the district court erred in determining that: (1) exculpatory evidence was not withheld from the police department's "open file" in the case; (2) a sheriff's deputy did not exert undue influence over two possible witnesses in the case to keep them from testifying at trial; and (3) under an objective standard of reasonableness, trial counsel was not constitutionally deficient in failing to interview the two witnesses. We affirm.

I.

On September 16, 1981, Stanley Fisher and his mother, Kate Fisher, were murdered. The police observed two men, Hrbek and Chadwick, leaving the scene of the murders in a pickup truck. After a lengthy, dangerous, high-speed chase, the police arrested both men. At the time of the arrest, Chadwick was driving the pickup truck.

The State charged Hrbek and Chadwick with murdering the Fishers. Hrbek was tried first and was convicted. Chadwick was thereafter tried and convicted. Chadwick's defense at trial was that although he was present when the Fishers were shot, he had not participated in the shootings. The state court instructed the jury that Chadwick should be found guilty if he shot either or both of the Fishers or if he aided and abetted Hrbek in the killings. The verdict form asked whether the jury found Chadwick not guilty or guilty of murder in the first degree, second degree, voluntary manslaughter, or involuntary manslaughter as to both counts. No objections were made to the aider-and-abettor instruction or to the verdict form. The jury found Chadwick guilty. The state court sentenced Chadwick to two life terms to run concurrently.

Chadwick appealed his conviction to the Iowa Supreme Court. He contended that the following trial court and prosecutorial errors required a new trial: (1) denial of defendant's motion for change of venue; (2) prosecutorial misconduct; (3) admission into evidence of photographs and a lead bullet core; (4) the giving of a "flight" instruction to the jury; and (5) overruling defendant's motion for a new trial. The supreme court affirmed the conviction. Chadwick then unsuccessfully sought post-conviction relief in state court. According to Chadwick, he has exhausted all state remedies.

Following this exhaustion, Chadwick sought habeas relief in federal court. He alleged that: (1) exculpatory evidence was withheld at trial; (2) due process required that he be allowed a new trial because of suppression of evidence by the State; and (3) his counsel was incompetent. The district court denied relief. The district court found that the State did not suppress favorable evidence and that the record as a whole supported the state court's factual determinations, defeating Chadwick's due process claim. Finally, the district court found that Chadwick had not shown "reasonable probability" that the result of his trial would have been different had the jury been able to consider the witnesses his trial counsel failed to investigate and introduce at trial.

On appeal, Chadwick contends that: (1) the conclusion that exculpatory information was not withheld is erroneous; (2) the actions of the sheriff's deputy were so egregious as to violate due process; and (3) his trial counsel was constitutionally deficient and prejudiced Chadwick's defense. We find no merit to the first and second claims. Thus, we limit our discussion to the ineffective assistance issue.

## II.

The evidence introduced at trial showed that Chadwick had worked for Stanley L. Fisher for some time. Fisher's father, Stanley E. Fisher, testified that on the day of the shooting, his son and his wife observed a red Toyota truck parked on the road near their home and that when the truck departed, his son pursued it at a high rate of speed. Kate Fisher then left, presumably to return to work. In any event, she also followed the red truck.

Connie Vanacek, the State's key witness in the case, testified that the red Toyota truck pulled into her driveway first. Both the mother and son pulled in afterwards and stopped their vehicles. Shortly thereafter, the shootings occurred in the Vanacek driveway. Vanacek testified that she saw or heard the events before, during, and after the shootings.

During the jury trial, counsel for Chadwick did not explore in any depth the relationship between the older and younger Fisher families, the relationship between Chadwick and the Fisher families, or why the Fishers pursued Chadwick into the Vanacek driveway.

The sequence of events, however, establishes that the parties had prior dealings. Stanley E. Fisher testified that Chadwick had worked for his son. Furthermore, there is some evidence in the record that Chadwick was a friend of Kay Fisher, one of the decedents. Moreover, the Fishers were not ambushed by Hrbek and Chadwick; they followed them into the Vanacek driveway. For whatever reason, neither the State nor the defense spent a good deal of time investigating the prior dealings or proving a motive for the homicides. While this fact is troublesome and the reasoning unclear, the issue is not raised in the appellant's brief.

We must decide whether trial counsel's failure to interview any witnesses, including two women who could have provided testimony to support possible defense theories, and to conduct a thorough investigation into the circumstances of the case fell below acceptable standards of competence. If counsel's performance was deficient, we must determine whether the appellant was prejudiced by this incompetence.

### A. Counsel's Performance

A defendant cannot establish a constitutional violation simply by demonstrating

that trial-related error, in this case the failure to call potentially exculpatory witnesses, could or may have affected the jury. To establish that ineffective assistance of counsel violates the sixth amendment, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

■ Similarly, failure of the prosecution to disclose exculpatory evidence to the defense regarding the witnesses violates due process "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). To receive a new trial based upon newly discovered evidence, a defendant must demonstrate that the evidence would more likely than not lead to a different outcome. *See INS v. Abudu*, 485 U.S. 94, 107 n. 12, 108 S.Ct. 904, 913 n. 12, 99 L.Ed.2d 90 (1988).

Chadwick contends that trial counsel was incompetent for failure to interview two women who allegedly drove by the scene of the homicides. The morning after the homicides, Peggy Vincent–Slake and Marita Reilly told the Pottawatomie County Sheriff's Office that they had driven by the scene before the shootings and detailed their observations. The two women explained that they saw a fourth car, a light blue station wagon with a woman in the driver's side, at the scene of the shootings. Vincent–Slake and Reilly, however, did not see anyone fire a gun or move toward the Fisher vehicles. Reilly did observe a weapon in the hand of the perpetrator who was outside of the Toyota. Reilly testified at the post-conviction hearing that the person she saw outside of the truck was John Hrbek, and that Chadwick was inside the truck and was not holding a gun. Chadwick maintains that because of the failure to interview these two witnesses, the jury was not informed that Hrbek, not Chadwick, was seen outside the Toyota with a gun in his hand.

At Hrbek's trial, the State's theory was that Chadwick was the perpetrator outside of the vehicle. *See State v. Hrbek*, 336 N.W.2d at 432. At his trial, however, Chadwick argued that he was the passenger inside the truck. Chadwick maintains that because of the failure to interview the two women, he was unable to develop testimony that would demonstrate that he was neither involved nor an aider and abettor in the shootings.

Reilly stated that Hrbek was the lone gunman outside of the truck with a weapon in his hand. Her testimony could have supported Chadwick's theory that Hrbek was the sole perpetrator in the shootings. Therefore, the potentially exculpatory witnesses were crucial to any evidence or theory that Chadwick could advance about his lack of involvement in the shootings.

Not only did trial counsel fail to interview the two women, he was unaware of statements by the women that a deputy in the Pottawatomie County Sheriff's Office met and questioned them for two to three hours to encourage them to change their original statements. Because of this failure, the jury did not hear these facts, supporting Chadwick's claim that trial counsel failed to conduct an adequate and thorough investigation of the case. Trial counsel did not interview any potential witnesses for trial, including the State's key witness, Connie Vanacek, and filed only one motion requesting a change of venue.

■ We agree that trial counsel was incompetent for not investigating the two witnesses and for failing to investigate the issues in the case. Had counsel done so, he *may* have been able to support Chadwick's argument that he did not participate in the killings. The question remains as to whether this failure was prejudicial to Chadwick.

### B. Prejudice

Chadwick contends that trial counsel's incompetence rises to the level of prejudice. We disagree.

In this case, the jury was allowed to determine if Chadwick was guilty of first-degree murder under the following theories: that he personally, with malice aforethought, committed willful, premeditated, and intentional murder; or, that he knowingly aided and abetted another in the commission of that type of murder. Substantial evidence was submitted to support these alternative theories. Trial counsel did not object to the aiding-and-abetting instruction, and that instruction is not challenged on appeal.

Even if Chadwick did not shoot Kate or Stanley Fisher, the evidence is overwhelming that Chadwick aided and abetted the murders at the Vanacek farm. A few days before the shooting occurred, Chadwick went to a used car dealer and purchased the red Toyota truck. Chadwick drove the red Toyota truck from the Vanacek driveway and was driving the Toyota when the truck was stopped after a high-speed chase. During the chase, the apprehending officer observed that two weapons were thrown from the Toyota truck. The officer testified that he fired five shots at the truck, four of which hit their target. Shortly thereafter, the Toyota stopped, and Charles N. Chadwick and John L. Hrbek were arrested.

There is also strong evidence that Chadwick participated in the shootings. The Fishers were shot with different caliber weapons. Stanley Fisher was shot with a .45 caliber gun. Kate Fisher was shot with a .380 caliber weapon. Vanacek testified that she saw both men with guns. The position of the bullets establishes that gunfire came from two separate locations. Officer Quigley of the Council Bluffs Sheriff's Office testified that .45 caliber shell casings were found around the Corvette which Stanley Fisher was driving, as well as where the Toyota truck would have been sitting in the Vanacek driveway. Quigley further testified that no .380 caliber casings were found around Kate Fisher's vehicle, but that these casings were found in the area were Vanacek placed the Toyota.

The evidence introduced at trial regarding the location of the bullets and the location of the two perpetrators is consistent with the State's theory that Chadwick shot Kate Fisher, or aided and abetted Hrbek in the shootings. We do not believe that the testimony of Reilly or Vincent–Slake would have changed the jury's verdict.

## CONCLUSION

We have considered each of Chadwick's remaining contentions and find them without merit. Accordingly, we affirm the decision of the district court.

BRIGHT, Senior Circuit Judge, dissenting.

I consider it a close call whether the established incompetence of counsel created sufficient prejudice to justify habeas relief.

In my view, however, I would grant relief. The testimony of the absent witnesses, Peggy Vincent–Slake and Marita Reilly, could have provided the peg for the jury to have brought in a verdict on a lesser included offense of murder in the second degree, voluntary manslaughter or involuntary manslaughter.

Thus, I would grant habeas relief subject to the State of Iowa granting Chadwick a new trial, limited to a determination of whether the defendant is guilty as charged, including aiding and abetting, or guilty of a lesser included offense.