

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-5-2003

# Abraham v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket 02-1684

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Abraham v. Atty Gen USA" (2003). *2003 Decisions.* Paper 756.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/756

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-1684

———————

ADAM ABRAHAM,
                                        Petitioner

v.

JOHN ASHCROFT, Attorney General of the United States;
IMMIGRATION AND NATURALIZATION SERVICE,
                                        Respondents

———————————————————

On Petition for Review of a Final Order of the
Board of Immigration Appeals
(BIA No. A78-425-218)

———————

Argued January 9, 2003

Before:  SCIRICA, BARRY and SMITH, Circuit Judges

(Filed: March 5, 2003)

JEREMIAH S. PAM, ESQUIRE (ARGUED)
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, New York 10006

        Attorney for Petitioner

STEPHEN J. FLYNN, ESQUIRE (ARGUED)

MARK C. WALTERS, ESQUIRE
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

      Attorneys for Respondent,
      John Ashcroft, Attorney General of the United States


JOHN D. WILLIAMS, ESQUIRE
TERRI J. SCADRON, ESQUIRE
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

      Attorneys for Respondents,
      John Ashcroft, Attorney General of the United States and
      Immigration & Naturalization Service

---

## OPINION OF THE COURT

---

SCIRICA, <u>Circuit</u> <u>Judge</u>.

This petition for review concerns the Board of Immigration Appeals' ("Board")

denial of Adam Abraham's applications for asylum and withholding of deportation under the

Convention Against Torture.[1]

---

[1]To be entitled to relief under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, 23 I.L.M. 1027 (1984), an alien must prove that he or she is more likely than not to be tortured in the country of removal. 8

(continued...)

**I.**

Abraham is a nineteen-year-old alien who purports to be a native and citizen of Sudan. He was apprehended on January 7, 2001 as a stowaway aboard a vessel entering the United States from South Africa. An Immigration and Naturalization Service ("INS") asylum officer found that Abraham did not demonstrate a credible fear of persecution or torture and was removable as an "arriving alien who is a stowaway." 8 U.S.C. § 1225(a)(2).[2] Abraham requested asylum and withholding of removal before an Immigration Judge, but was denied those requests. Abraham appealed to the Board, which dismissed. This petition for review followed.[3]

The sole issue on appeal is whether the Immigration Judge and Board properly determined that Abraham failed to meet his burden of proving eligibility for asylum or withholding of removal under the Convention Against Torture.

---

[1](...continued)
C.F.R. §§ 208.16(c)(2), (4). "Torture" is defined as an extreme form of cruel and inhuman treatment. 8 C.F.R. § 208.18(a)(2). To constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. 8 C.F.R. § 208.18(a)(5).

[2]8 U.S.C. § 1225(a)(2) provides:
> An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer. Upon such inspection if the alien indicates . . . a fear of persecution, the officer shall refer the alien for an interview under subsection (b)(1)(B) of this section. A stowaway may apply for asylum only if the stowaway is found to have a credible fear of persecution under subsection (b)(1)(B) of this section.

[3]We have jurisdiction under 8 U.S.C. § 1252.

3

**II.**

Abraham testified through a Swahili interpreter that he was born in Yei, a small town in southern Sudan, and later moved with his parents and brother to a village in the town of Torit. He testified that he and his family were members of the Dinka minority ethnic group, that he and his family practiced Catholicism, and that his father and brother were members of a political party known as the Sudan People's Liberation Army ("SPLA"). Although Abraham had no documentation confirming his family's membership in the SPLA, he claimed that his parents would not let him leave home out of fear that he would be taken by government supported militia groups, such as the mujahadeen, which fought the SPLA and captured children and sent them to war.

Abraham testified that in 1994, when he was eleven years old, a group of men invaded and burned his home. He and his brother allegedly escaped to a town in Uganda, where they lived with a family for five years. Abraham could produce no letter, affidavit or other documentation from the family, nor could he provide an address. Nor could Abraham provide evidence regarding what happened to his parents, but claimed his mother had been killed and that his father was probably in jail. This information was allegedly conveyed to Abraham through his brother, who received the information from two young men. The young men claimed the mujahadeen carried out the attack. Abraham had no letter, affidavit, or other documentation in support of these allegations.

In 1999, when Abraham was 16, he and his brother allegedly left Uganda for South Africa. At the South African border they were stopped by police who gave them a written order

4

to leave the country within seven days. Abraham could not produce a copy of this document. The two men continued on to South Africa where they resided with other refugees in Johannesburg for nine months. Abraham did not know the address of the apartment, nor could he produce any evidence to confirm these claims. Abraham was unable to produce corroborating evidence from his brother or relatives.

**III.**

Asylum will be granted where an alien establishes that he is a refugee who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C § § 1101(a)(42)(A), 1158(a). The Immigration Judge found that Abraham failed to provide consistent, detailed, and believable testimony to establish that he had a well-founded fear of persecution on account of his nationality, ethnicity, religion, or political affiliation. The Board deferred to the Immigration Judge's decision, stating, "Because we adopt the Immigration Judge's well-supported determination that the applicant's testimony cannot be accepted as credible, it follows that the applicant has failed to satisfy his burdens of proof and persuasion."

We review the Immigration Judge's decision to assess whether the Board's deference was proper.[4] Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). The

_____

[4]In Abdulai, we said:

The vast majority of the courts of appeals have held that the BIA "may simply

(continued...)

5

Board's determination must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). (quoting 8 U.S.C. § 1105a(a)(4)). It should be reversed only if Abraham presented evidence such that "a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Id. Furthermore, reversal is appropriate only if "the evidence not only *supports* the conclusion, but *compels* it – and also compels the further conclusion that [Abraham] had a well-founded fear" that he would be persecuted "*because of* that political opinion." Id. at 481 n.1. Direct proof of the persecutors' motives is not required, but there must be some evidence of it, either direct or circumstantial. Id. at 483.

---

[4](...continued)
state that it affirms the IJ's decision for the reasons set forth in that decision." In such cases, the IJ's opinion effectively becomes the BIA's, and, accordingly, a court must review the IJ's decision. The BIA may disregard an IJ's factual findings and conduct a de novo review of the entire record, but it is also entitled to defer to an IJ's fact-finding (assuming, of course, that the IJ's conclusions are supported by the evidence). When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate.

239 F.3d at 549 n.2 (internal citations omitted).

## IV.

The Immigration Judge found Abraham's testimony incredible regarding his nationality, ethnicity, and religion. Abraham conceded an inability to speak Dinka, which allegedly was the language primarily spoken in his home for the first 11 years of his life. The Immigration Judge found it implausible that Abraham had "completely forgotten his native language in less than seven years." Furthermore, Abraham's comprehension of Arabic, which he alleged to have used extensively in his youth, extended no further than a few phrases.[5] Abraham demonstrated proficiency in Swahili, which is not a language of the Sudan, and English. The Immigration Judge also questioned Abraham's religious affiliation. Abraham claimed to be a practicing Catholic but provided sparse testimony regarding Catholic practices and beliefs.

The inconsistencies in Abraham's testimony provided substantial evidence to support the Immigration Judge's adverse credibility finding. At the time Abraham left South Africa, he had lived relatively unmolested for 18 months and had resided in tranquility in Uganda for five years. He allegedly has numerous friends, family, and acquaintances throughout Sudan, Uganda, and South Africa. Yet Abraham failed to produce any evidence that attested to his identity, nationality, or religion.

With regard to past persecution, the Immigration Judge concluded that the only possible basis to support Abraham's claim was his father's alleged participation in the

---

[5]Abraham testified that the languages spoken in the Sudan were "Arabic, English, and tribal languages."

7

SPLA that led to an invasion of Abraham's home, killing of his mother, and imprisonment of his father. The Immigration Judge found this basis insufficient because Abraham did not see the men who invaded his home or know what happened to his parents. The only information regarding his parents' fate came from two young men who coincidentally ran into Abraham's brother. The Immigration Judge said:

> Assuming that such an unlikely encounter occurred and ignoring the presence of multiple levels of hearsay, the information provided by the young men is insufficient [to] corroborate the applicant's account of the invasion of his home. The young men themselves did not witness the attack on the home, nor did they explain whether the applicant's mother was killed at that time or at a later date or the manner in which she was killed. Additionally, the representation that the applicant's father was imprisoned and that the mujahadeen were responsible was admitted conjecture. Again, the applicant has provided no affidavits or other documentation to corroborate these representations.

Furthermore, the Immigration Judge did not believe Abraham was from the Sudan and found he failed to establish a well-founded fear of future persecution because he neither speaks Dinka nor possesses the physical characteristics of a Dinka. In addition, the Immigration Judge found:

> The applicant left Sudan when he was eleven years old, approximately seven years ago, during which time he has grown and matured into adulthood. There is nothing to indicate that the applicant, seven years later, would be identified, let alone recognized as a Catholic or Dinka, if he were to return to Sudan. Additionally, there is nothing to indicate that the applicant would be recognized or remembered for his family's affiliations with the SPLA. The applicant testified himself that his father was a mere member of the SPLA and did not hold any leadership position within the party.

Thus, the Immigration Judge found a lack of any well-founded fear of future persecution, as is required for asylum. We agree.

8

Abraham bears the burden of establishing his eligibility for asylum, and the contradictions in his testimony regarding the heart of his claim support the conclusion that he has not done so. He has failed to establish that he suffered past persecution or has a well-founded fear of future persecution. Nothing in the record compels a result different from that reached by the Board and Immigration Judge.

## V.

Abraham's application for withholding of removal under the Convention Against Torture is based on the same testimony and evidence presented in support of his asylum claim. Abraham has not provided evidence sufficient to meet his burden of demonstrating that he is more likely than not to be tortured by, at the instigation of, or in acquiescence of a public official or other person acting in an official capacity. See 8 C.F.R. §§ 208.16(c)(4), 208.18(a)(1). Thus, we agree with the Board and Immigration Judge that Abraham has "failed to substantiate his claim by any means, either through his own testimony or corroborative documentation."

For these reasons, we will deny the petition for review.

9

_____

TO THE CLERK:

Please file the foregoing opinion.

/s/ Anthony J. Scirica
Circuit Judge