

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-2003

# Botchway v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4301

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Botchway v. Atty Gen USA" (2003). *2003 Decisions.* Paper 461.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/461

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4301and 02-1544

LINDA BOTCHWAY,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES,

Respondent

APPEAL FROM THE UNITED STATES IMMIGRATION
AND NATURALIZATION SERVICE
Agency No. A78 425 200

Submitted Under Third Circuit LAR 34.1(a)
June 6, 2003

Before: BARRY, FUENTES, <u>Circuit Judges</u>, and McLAUGHLIN,[*] <u>District Judge</u>

(Opinion Filed: June 13, 2003)

OPINION

_____

[*]Honorable Mary A. McLaughlin, United States District Judge for the Eastern District
of Pennsylvania, sitting by designation.

BARRY, Circuit Judge

Petitioner Linda Esi Enyonam Botchway unlawfully entered this country and applied for asylum and withholding of deportation under the Convention Against Torture. The immigration judge ("IJ") ordered her removed, and she filed a timely appeal to the Board of Immigration Appeals ("BIA"). The BIA affirmed and issued a final order of removal. Botchway filed a timely motion to reconsider and simultaneously filed a timely petition for review (No. 01-4301). The BIA denied the motion to reconsider, and Botchway filed a second petition for review (No. 02-1544). We consolidated the two petitions. We have jurisdiction pursuant to 8 U.S.C. § 1252(b)(2), and will deny both petitions.

## I.

Botchway, then a 20-year-old citizen of Ghana, arrived at JFK airport on January 7, 2001 and sought admission to the United States using fraudulent travel documents. She was placed into expedited removal proceedings and was interviewed by an immigration officer. Botchway lied about her name and age and reported that she had come to the United States to escape her fiancé, who had threatened to harm her because he believed that she had killed their child shortly after giving birth three years earlier. A dentist examined Botchway and determined that she was under 18, not 30 years old, as she had claimed, and as stated on the passport that she was using.

On January 9, Botchway was interviewed at the INS detention facility and

admitted her true name and birthdate, August 31, 1980; however, she continued to claim that she was fleeing the father of her baby.

At her credible fear interview on February 6, 2001, at which she was represented by counsel, Botchway claimed for the first time that she feared returning to Ghana because she would face female genital mutilation ("FGM") as the first-born grandchild in her tribe's royal family; she did not discuss either the alleged fiancé or the dead child. The asylum officer determined that Botchway had a credible fear of persecution and terminated expedited removal proceedings.

At her removal hearing, Botchway conceded removability pursuant to 8 U.S.C. §§ 1182(a)(6)(C)(I), (a)(7), and applied for asylum and withholding of deportation under the Convention Against Torture. At her first asylum hearing on April 9, 2001, Botchway explained that she is a member of the royal Agbadza family, in the Denu clan of the Ewe tribe, from the city of Tema, located near the capital, Accra, on the southeastern coast. She claimed that tribal custom requires that every female first-born grandchild in the royal family be ritually circumcised, and that she fled Ghana to escape this practice. Botchway admitted that she lied to immigration officials regarding her identity and about being threatened by the father of her baby, both in her initial interview and at the detention facility.

In support of her claim, Botchway introduced secondary materials about the practice of FGM in Ghana and sworn letter-statements by her mother and sister. She also

3

introduced the live testimony of her purported cousin, Michael Amissah, who corroborated her testimony that it was the custom among the Ewe to circumcise first-born female children in the royal family.

At the conclusion of the May 9, 2001 hearing, the IJ rendered an oral decision in which he denied Botchway's application for asylum and withholding of removal, and ordered her removed to Ghana. The IJ found Botchway not credible, based on inconsistencies and implausibilities in the testimony given by her and Amissah, and in light of the secondary materials that did not report the practice of FGM among the Ewe or in the southeastern part of the country. The IJ also relied on Botchway's false statements to immigration officials both upon entry and at the detention facility. The IJ gave little or no weight to the letters written by Botchway's mother and sister, which he found "contrived," submitted upon Botchway's request, and "much too formal."

Botchway appealed to the BIA. In a decision dated November 5, 2001, the BIA affirmed and issued a final order of removal. One BIA member dissented, on the bases (1) that the BIA had disregarded the affidavits by Botchway's mother and sister and (2) a written statement by Amissah that the translator had told him that he had not accurately translated Botchway's testimony.

On December 5, 2001, Botchway filed a motion to reconsider and stay removal to the BIA and a petition for review of the BIA's decision (No. 01-4301). On January 31, 2002, the BIA denied the motion to reconsider. Botchway filed a petition for review of

4

that decision (No. 02-1544). We consolidated Nos. 01-4301 and 02-1544.

## II.

The Immigration and Nationality Act (the "Act") authorizes the Attorney General, in his discretion, to grant asylum to an alien who is a "refugee" as defined in the Act, *i.e.,* an alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1); 1101(a)(42)(A). In order to show that she has a well-founded fear of persecution, Botchway must show both that she genuinely fears persecution if she returns to Ghana and that her fear is objectively reasonable. *Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001). In order to be entitled to withholding of deportation under the Convention Against Torture, Botchway must satisfy a stricter standard by showing that she "is more likely than not to be tortured in the country of removal." 8 C.F.R. § 208.16(c)(2), (4); *Abraham v. Ashcroft*, 59 Fed. Appx. 476, 477 n.1 (3d Cir. 2003). The BIA's decision is conclusive unless it is "manifestly contrary to the law and an abuse of discretion," and its findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4). In other words, findings of fact can be reversed only if they are not supported by substantial evidence. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Sevoian v. Ashcroft*, 290 F.3d 166, 168 (3d Cir. 2002).

### A.    Botchway's Claim for Asylum or Withholding of Removal

In denying Botchway's application for asylum or withholding of removal, the BIA expressly agreed with the IJ's adverse credibility determination based on inconsistencies in the hearing testimony and a finding that the secondary materials did not support Botchway's claim. With respect to the testimony, the IJ pointed to several implausible statements at the hearing. For instance, although Botchway claimed that the Ewe royal family keeps its illegal practice of FGM a secret from the government, Amissah testified that Ghanians were well aware of the practice. Amissah also testified that FGM was usually performed about the age of puberty unless the female did not live with her tribe; however, Botchway testified that she had always lived with her tribe and had not yet undergone the procedure at 20 years of age. The IJ found that Botchway had not adequately explained why she had not been forced to undergo FGM earlier; the IJ did not credit Botchway's explanation that her grandmother had successfully protected her from the practice until she became queen. Although the IJ did not explicitly make an adverse credibility determination with respect to Amissah, the IJ implicitly found him not credible by speculating that Botchway concocted her story sometime during the month between her arrival in the United States and her credible fear hearing, possibly with Amissah's assistance.

The BIA also found that the secondary materials documenting the practice of FGM in Ghana discredited Botchway's claim that her tribe practices FGM. The BIA noted the

6

fact that FGM is practiced among certain tribes in the north and among northern migrants in the south. Since Botchway is from a city on the southern coast, which does not include northern migrants as far as the record shows, and her tribe, the Ewe, was not listed among those known to practice FGM, the BIA concluded that the record contradicted her claim that her tribe practices FGM.

We have held that the BIA may "sometimes require otherwise-credible applicants to supply corroborating evidence in order to meet their burden of proof." *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001). We have also noted, albeit in a non-precedential opinion, that "[m]any secretive practices..., especially those that threaten human rights, are documented by Government and Non-Governmental agencies, academics, and journalists." *Frimpong v. Ashcroft*, No. 00-2644, at *7-8 (3d Cir. July 20, 2001). The 2000 Country Report indicates that Ghana's President and close advisers were Ewe. Considering that the Ewe tribe is prominent in the government of Ghana, it was reasonable for the BIA to seek objective evidence of Botchway's membership in the Ewe royal family or the Ewe royal family's practice of FGM.

In its November 5, 2001 decision, the BIA did not discuss the testimony by Amissah or the letters by Botchway's mother and sister–all of which supported her testimony that FGM was practiced by her tribe. In response to Botchway's motion to reconsider, however, the BIA briefly addressed the two letters and agreed with the IJ's finding that they were "entitled to little weight." In light of the dearth of objective

7

corroborating evidence and its adverse credibility determination, the BIA was entitled to find that the letters Botchway submitted from her mother and sister were insufficient to corroborate her claim. Although the BIA did not expressly address Amissah's testimony, by deferring to the IJ's adverse credibility determination, it implicitly adopted the IJ's finding that Amissah's testimony contradicted Botchway's testimony as to the practice of FGM among the Ewe royal family.

In conclusion, because the BIA's adverse credibility finding is supported by substantial evidence, the BIA did not abuse its discretion in concluding that Botchway was ineligible for asylum. Because Botchway failed to establish a well-founded fear of FGM if she returned to Ghana, she is likewise unable to show that she is more likely than not to suffer FGM in Ghana. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987). Therefore, the BIA also did not abuse its discretion in finding that Botchway had failed to establish eligibility for relief under the Convention Against Torture.

**B.     Request to Reopen Proceedings Because of Erroneous Translation**

We review the BIA's denial of a request to reopen proceedings on the basis of new evidence for an abuse of discretion.[1] *INS v. Abudu*, 485 U.S. 94, 105 (1988).

---

[1] Although Botchway's motion was formally styled a "motion to reconsider," to the extent that it was based on the submission of new evidence, we will treat it as a motion to reopen.

In support of her appeal, Botchway submitted a statement by Amissah dated September 5, 2001, in which he claimed that the interpreter told him on April 9, 2001, after the first day of the hearing on Botchway's asylum claim, that he improperly translated Botchway's testimony in order to protect the reputation of Ghana. The BIA did not refer to this statement in its November 5, 2001 decision. In denying Botchway's motion to reconsider, however, the BIA briefly addressed this issue, finding that Botchway had not met her burden of proof because she had not established the reliability of the information contained in Amissah's statement or any material errors in the translation of her testimony.

The BIA's decision was not an abuse of discretion, for several reasons. First, although Amissah was presumably aware of the information contained in the statement as of April 9, 2001, Botchway's counsel did not raise this concern at her May 9, 2001 hearing. Botchway has not explained why the information in the letter was not available and could not have been discovered or presented at the May 9, 2001 hearing, as required by 8 C.F.R. § 3.2(c)(1).[2]

---

[2] 8 C.F.R. § 3.2 has since been moved to 8 C.F.R. § 1003.2, as a result of the enactment of the Homeland Security Act of 2002 ("HSA"), Pub. L. 107-296, tit. IV, subtits. D,E, F, 116 Stat. 2135, 2192 (Nov. 25, 2002) (as amended), which transferred the functions of the Immigration and Naturalization Service ("INS") to the Department of Homeland Security ("DHS"). The functions of the Executive Office for Immigration Review ("EOIR") continue to reside in the Department of Justice, under the direction of the Attorney General. This transfer of functions led to the promulgation of final rule 68 Fed. Reg. 9824-01, effective February 28, 2003, which made no substantive changes in the regulations but placed the regulations pertaining to the INS and those pertaining to the

Second, the letter is not a sworn affidavit and, thus, Botchway has not established the reliability of the information contained in it, as 8 C.F.R. § 3.2(c)(1) requires. Third, because Amissah's statement was extremely vague, it provides us with no way of determining whether any translation errors were material to Botchway's claim. Finally, Botchway herself, through her counsel, did not point to any errors in the translation of her testimony, although she speaks English rather well.

Since Botchway has failed to satisfy her burden of showing material and prejudicial errors in the translation, the BIA did not abuse its discretion in denying her request to reopen proceedings on the basis of Amissah's statement.

## III.

For the foregoing reasons, the petitions are denied.

/s/Maryanne Trump Barry
Circuit Judge

---

EOIR in separate chapters. In relevant part, the rule transferred part 3 to part 1003, which is part of the organic regulation for EOIR. 68 Fed. Reg. 9824-01, 9824-26 (Feb. 28, 2003).