Famola ADENIYI, Petitioner,

v.

BUREAU OF IMMIGRATION AND
CUSTOMS ENFORCEMENT,
Respondent.

NSo. 04–0823–AG(L), 04–5192–
AG(CON) NAC.

United States Court of Appeals,
Second Circuit.

Dec. 9, 2005.

Famola Adeniyi, Elizabeth, New Jersey, for Petitioner, pro se.

Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, F. Franklin Amanat, Varuni Nelson, Assistant United States Attorneys, Brooklyn, New York, for Respondent.

Present: NEWMAN, RAGGI, and HALL, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION of this petition for review of the Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is hereby DENIED, the BIA's orders are AFFIRMED, and the motion for a stay of removal is DENIED as moot.

Adeniyi Famola, *pro se*, petitions for review of the BIA decision denying his claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), and of the BIA's denial of his motion to reopen. We assume the parties' familiarity with the underlying facts and procedural history.

### A. The Petition for Review

Where, as here, the BIA summarily affirmed the IJ, this Court reviews the decision of the IJ directly. *Twum v. INS*, 411 F.3d 54, 58 (2d. Cir.2005).

#### 1. The Merits of Famola's Asylum Claim

##### a. *Nexus to a Protected Ground*

■ This Court reviews factual questions, including whether Famola's fear of persecution is on account of a protected ground, under the substantial evidence standard. *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003). Accordingly, the IJ's finding that Famola feared personal retaliation rather than religious persecution will be upheld if supported by " 'reasonable, substantial, and probative' evidence in the record when considered as a whole." *Secaida–Rosales*, 331 F.3d at 307 (quoting *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir.2000)). The adverse credibility finding will be reviewed under the same standard. *See id.* at 307.

Evaluating all the evidence, the IJ found that Famola's uncle was more likely threatening him because of the land dispute, not because of his religious conversion. In making this finding, the IJ properly emphasized the inconsistency between his testimony and his airport interview. At the airport, Famola made no mention of religion, but talked at length about how his uncle had demanded the property his father left him; when asked why he left Nigeria, he answered, "My uncle wants to kill me *because of the land*" (emphasis added). These statements were an appropriate factor for the IJ to consider in evaluating Famola's credibility, as the rec-

ord of the interview indicate that it accurately represents Famola's statements and was not conducted under coercive circumstances. *Ramsameachire v. Ashcroft*, 357 F.3d 169, 179 (2d Cir.2004). Moreover, Famola did not deny the existence of the land dispute in his I–589 or his testimony; to the contrary, he testified about it at length, and stated that at one point, his uncle also wanted to kill his father on account of the land. Famola provided ample evidence to support the IJ's finding that his uncle's wrath was inspired by the land dispute.

On the other hand, Famola provided no evidence, other than his own testimony, to support his assertion that his uncle wanted to punish him for his religious conversion. He provided documents that prove, at most, the mere existence of the religious group and the fact of Famola's later conversion. Famola presented no evidence to substantiate his claim that those who leave the faith are punished, and never alleged that the man whose sacrifice he witnessed was a defector. Moreover, the IJ properly found the documents that Famola submitted, particularly those from the church, to be of questionable validity because they partially contradicted his testimony. The record as a whole simply does not compel a finding that Famola's uncle would persecute him because of religion, rather than the land dispute. *Elias–Zacarias*, 502 U.S. at 483, 112 S.Ct. 812. Even under a "mixed motives" analysis, the element of religion in Famola's story is insufficient to establish that his uncle was motivated in significant part by that factor. *See id.* at 482, 112 S.Ct. 812; *Matter of S–P–*, 21 I. & N. Dec. 486, 1996 WL 422990 (BIA 1996).

### b. *State Action*

█ Regardless of the uncle's exact motivation, the IJ also noted that there was no evidence of any government involve-

ment in his dispute with Famola. The IJ found that Famola could not reasonably claim that the government failed to protect him when he never reported his problems or sought any assistance from the police. The IJ also noted that the evidence on record that Nigeria had outlawed human sacrifice, and therefore found that Famola's claim that the government would not have been willing or able to help him was unreasonable. On the other hand, Famola's claim that Nigerian government officials are themselves secret idol worshipers, who would therefore take the uncle's side over his, was mostly speculative, supported only by several Internet articles, most of them anonymous. However, some of the articles confirmed that the Nigerian police at least investigate cults accused of inhumane practices. In light of the questionable reliability of these sources, the lack of confirmation of any of the allegations in the articles, and the fact that some of the claims in the articles actually support the IJ's findings, a reasonable fact-finder would not be compelled to credit Famola's assertions about the Nigerian government.

### c. *Past Persecution*

[3] Even if Famola had established a nexus to a protected ground, the IJ concluded that the harm he experienced did not amount to persecution. This Court reviews an IJ's application of legal principles to the particular facts of a case, including what degree of harm amounts to past persecution, *de novo*. *Secaida–Rosales*, 331 F.3d at 307. This Court recognizes that "various types of conduct constitute persecution," *Guan Shan Liao v. United States Dep't of Justice*, 293 F.3d 61, 67 (2d Cir.2002), but has generally required that the conduct be severe, rising above mere harassment. *Tian–Yong Chen v. INS*, 359 F.3d 121, 128 (2d Cir.2004). Threats and destruction of property can be evidence of persecution, if credible and

described in sufficient detail to indicate the persecutor's motivation and intent. *See Guan Shan Liao*, 293 F.3d at 70. However, the IJ found Famola's testimony relating to the threat he received somewhat unreliable, and there was insufficient evidence to indicate that the uncle would carry out any such threat. Therefore, this evidence was insufficient to establish past persecution. *See id.* Moreover, none of the uncle's actions would be considered past persecution if the uncle committed them for reasons related to the land dispute, rather than to Famola's religious conversion.

### d. *Well–Founded Fear of Future Persecution*

■ Because Famola did not establish past persecution, he was not entitled to the presumption that he had a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). The IJ also found that he could not independently establish a well-founded fear when he had not shown that there was a pattern or practice of targeting individuals who left cults, or that he could not live safely elsewhere in Nigeria. This Court reviews such findings of fact under the substantial evidence standard. *Secaida–Rosales*, 331 F.3d at 307.

Famola failed to prove either that he would be singled out for persecution or that there was a pattern or practice of persecution of cult deserters in Nigeria. *See* 8 C.F.R. § 1208.13(b)(2)(C)(iii). He provided no evidence, either in his testimony or the supporting articles, of how the cult selects its sacrifice victims. Additionally, there was insufficient evidence that his uncle would carry out his threat. While the uncle's ransacking of Famola's house could be construed as evidence he would carry out the threat, it is equally consistent with the IJ's theory that the uncle was retaliating against Famola for

having burned the place of worship. The latter action would not constitute persecution. In evaluating competing interpretations of the evidence, this Court must defer to the IJ's theory if it is reasonable. *See Zhou Yun Zhang v. INS*, 386 F.3d 66, 73–74 (2d Cir.2004).

Famola contests the IJ's finding that he could avoid persecution through internal relocation, because he is recognizable everywhere as a Yoruba and an idol worshiper, he could not safely relocate to the unstable regions of Nigeria, and he tried to relocate before, but it would only have been a matter of time before he was found out. However, nothing in the record indicated that tribal people could not move around freely within Nigeria, or that Famola would be compelled to move to any particular region. The record does indicate, however, that he previously relocated to Lagos, and did not face any harm there—until he voluntarily returned to the village and burned his uncle's place of worship. After his house in Lagos was ransacked, he relocated to Ogun State, and he did not allege that he experienced any harm there. The record indicates that he chose to leave not out of immediate fear, but because he received an American passport. His claim that it was only a matter of time before someone found him in Ogun State is pure speculation, and is thus insufficient to support a well-founded fear of persecution.

### 2. The CAT Claim

The IJ's denial of CAT relief is also supported by substantial evidence. The regulations require that the alleged torture be committed "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Famola failed to establish that Nigerian officials would encourage or

condone his uncle's cult practices. "Acquiescence" includes both actual knowledge and willful blindness, *see Khouzam*, 361 F.3d at 171, but there is no indication in the record that any authorities were aware of what was happening in Famola's village. Once again, his failure to report any of his uncle's actions to the authorities undermines his claim that they would not take any action to protect him. If Famola could not meet the lower burden of proving the government was unable or unwilling to control his uncle, for asylum purposes, he necessarily cannot prove that his uncle was acting with government consent or acquiescence.

## B. Denial of the Motion to Reopen

The BIA's denial of Famola's motion to reopen is reviewed for an abuse of discretion. *See Kaur v. BIA*, 413 F.3d 232, 233 (2d Cir.2005) (per curiam); *Khouzam*, 361 F.3d at 165 (citing *Brice v. United States Dep't of Justice*, 806 F.2d 415, 419 (2d Cir.1986)). A "motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1) (2005); *Kaur*, 413 F.3d at 234. Failure to offer such evidence is, therefore, a proper ground on which the BIA may deny a motion to reopen, as is the movant's failure to establish a prima facie case for the underlying substantive relief sought. *See INS v. Abudu*, 485 U.S. 94, 104–05, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988).

The BIA did not abuse its discretion here. Although the evidence of Famola's sister's attack was not available at the time of his hearing, it cannot be considered material. *See* 8 C.F.R. § 1003.2(c)(1). The evidence that Famola's pursuers attacked his sister, in an attempt to learn his whereabouts, sheds no light on whether the attackers sought Famola because of his religious conversion, rather than the land dispute. Moreover, by submitting a police report, which indicated that his sister was not afraid to go to the police for help, he undermined his claim that the police were unable or unwilling to provide any protection. Because the new evidence failed to help Famola establish the critical missing link—nexus to a protected ground, he failed to establish a prima facie case for asylum, and the BIA did not abuse its discretion in denying his motion. *Abudu*, 485 U.S. at 104–05, 108 S.Ct. 904, *Kaur*, 413 F.3d at 233–34.

Accordingly, the petitions for review of both BIA decisions are DENIED. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).