KENNEDY, Circuit Judge,
dissenting.
Because the record supports the findings of the IJ and does not compel the conclusion that Mr. Mecaj did not attempt to thwart delivery of notice, I respectfully dissent. We can only disagree with an IJ’s findings of fact regarding a motion to reopen when those findings amount to an abuse of discretion. INS v. Abudu, 485 U.S. 94, 96, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). The IJ made two alternative findings, both of which allowed the IJ to deny Mr. Mecaj’s motion to reopen. First, the IJ found that Mr. Mecaj did not require notice under the statute. Second, the IJ found that Mr. Mecaj should be charged with constructive receipt under 8 U.S.C. § 1229a(b)(5)(C)(ii) because he had thwart *453 ed the government’s good faith attempt to provide him with notice of his removal hearing. See Maghradze v. Gonzales, 462 F.3d 150, 154 (2d Cir.2006). Specifically, the IJ held: “If [Mr. Mecaj] did not receive the notice of [the rescheduled] hearing, [it was] because [Mr. Mecaj] moved without advising this Court of this change of address, [so his lack of notice] was due to his [inexcusable inaction.” J.A. at 30 (Order of Immigration Judge). Both findings are supported by the record, and therefore are not an abuse of discretion.
I. No Notice Was Required
The majority erroneously concludes that Mr. Mecaj was entitled to notice. 8 U.S.C. § 1229a(b)(5)(B), however, provides that no written notice of a removal hearing shall be required if the “the alien has failed to provide the address required under section 1229(a)(1)(F).” 8 U.S.C. § 1229(a)(1)(F) explicitly mandates that the alien must provide his address in two circumstances. First, the alien must “immediately provide” an address when the Notice to Appear is completed. § 1229(a)(l)(F)(i). Second, and what is at issue here, the alien must “provide the Attorney General immediately with a written record of any change of the alien’s address or telephone number.” § 1229(a)(l)(F)(ii).
After “immediately providing]” an address in Farmington Hills when taken into custody, J.A. at 59 (Notice to Appear dated February 10, 2003), Mr. Mecaj then changed his address on file to Waterford upon release from INS custody, J.A. at 49 (Notice to the Executive Office of Immigration Review (EOIR): Alien Address form dated February 18, 2003) (“Upon release from INS custody, the respondent^ Mr. Mecaj,] reported his[] address and telephone number will be: [in Waterford].”). Mr. Mecaj, however, now claims that he was not living in Waterford, but was living in Farmington Hills. J.A. at 42 (Affidavit of Ndue Mecaj) (“I reside at ... Farmington Hills .... ”); see Petitioner’s Brief at 9 (referring to the Waterford address at the time of Mr. Mecaj’s release from custody as Mr. Mecaj’s “old address”). Mr. Mecaj, after having provided an incorrect address in Waterford, never updated his address to reflect the fact that, as he now claims, he was living in Farmington Hills.[1] Such failure to discharge his statutory duty to update and correct his address means that the IJ can decide that he must face the consequences under the statute, which is an order of removal •without notice being required. See 8 U.S.C. § 1229a(b)(5)(B). Because, based on the facts admitted by Mr. Mecaj, notice was no longer required, the IJ did not abuse his discretion in denying Mr. Mecaj’s motion to reopen on the grounds of failure to receive notice.
The majority protests this result based on a theory that the petitioner did not advance and for which not a shred of evidence exists in the record. They say that Mr. Mecaj “did provide an address,” namely the one in Waterford, and that he therefore discharged his statutory duty to provide a correct address because he can claim that he expected to, and yet did not, receive notice at “that address” in Waterford. Maj. Op. at 451. First, while Mr. Mecaj certainly could make such an argument and offer supporting evidence, if he had any, the majority ignores both the fact that he did not so argue and the fact that he did not present a single bit of evidence in that regard. Mr. Mecaj, instead, assert *454 ed that he “reside[s] at ... Farmington Hills,” and nowhere claimed that he expected to receive notice at the Waterford address. See J.A. at 42 (Affidavit of Nude Mecaj). Indeed, Mr. Mecaj’s only argument, in fact, is that the government sent notice to the wrong address. See Petitioner’s Brief at 10 (referring to the Waterford address as “incorrect”). The only evidence the majority cites for its own argument is the fact that somehow Mr. Mecaj received the first notice, which was mailed only to Waterford. The majority prefers to draw the conclusion that this received delivery indicates that Mr. Mecaj expected to receive notice in Waterford. This conclusion, however, directly contradicts Mr. Mecaj’s assertion in his brief that the Waterford address was “incorrect.” Indeed, there are numerous explanations for Mr. Mecaj’s receipt of the notice sent to Waterford that would be consistent with Mr. Mecaj’s own assertions. The majority’s assuming of facts not argued, and contrary to those asserted, by the petitioner is made more unwarranted by the fact that Mr. Mecaj carries the burden of proof when moving to reopen. See 8 U.S.C. § 1229a(b)(5)(C)(ii). Mr. Mecaj could have, and yet did not, assert the majority’s assumed facts in his affidavit, nor did he even argue in his brief that the majority’s assumed facts are true. I do not understand how the majority can conclude that the IJ abused his discretion, a decision which the BIA affirmed, based on an argument which the petitioner did not assert and for which there is no evidence in the record to carry the petitioner’s burden of proof.
II. Mr. Mecaj Should be Charged with Constructive Receipt
The IJ also found, in the alternative, that Mr. Mecaj should be charged with constructive receipt of notice because he thwarted the government’s attempt to provide him with notice of his rescheduled removal hearing. The majority erroneously cites two reasons for disregarding the IJ’s alternative holding.
First, the majority asserts that the IJ did not find that Mr. Mecaj thwarted the government’s attempt to provide him notice of his rescheduled removal hearing. They believe that the IJ was “address[ing] a hypothetical that does not correspond to Mecaj’s claim.” Maj. Op. at 452 n. 1. This fundamentally misinterprets the IJ’s holding. The IJ first held that Mr. Mecaj was not entitled to notice at an address different from the one he had supplied. The IJ then held in the alternative that if in fact Mr. Mecaj was entitled to notice yet did not receive it, his lack of notice “was due to his [injexcusable inaction.” J.A. at 30. I do not understand how the majority can characterize this alternative holding as a random aside by the IJ “that does not correspond to Mecaj’s claim.”
Second, the majority asserts that even if the IJ in fact found Mr. Mecaj thwarted the government’s attempt at notice, the IJ abused his discretion because there was “no evidence that Mecaj has in any way attempted to thwart service of notice.” Maj. Op. at 452. This conclusion, however, ignores the record in this case.
The IJ’s alternative holding, that Mr. Mecaj was at fault for thwarting the government’s attempt at notice, was in fact well-supported by the record. The majority emphasizes that Mr. Mecaj at one time gave the government an address in Farmington Hills, which he now claims was his correct address. Maj. Op. at 452. This completely ignores the fact, which the IJ found and the majority admits, that Mr. Mecaj then amended his address to one in Waterford. J.A. at 29 (Order of Immigration Judge); Maj. Op. at 451 (noting that the last address Mr. Mecaj provided was *455 in Waterford). The only reason the government’s notice did not reach Mr. Mecaj as he claims, therefore, is because Mr. Mecaj provided an address to be used by the immigration court that he now claims was incorrect. I do not understand how this does not “make himself unreachable.” See Sabir v. Gonzales, 421 F.3d 456, 459 (7th Cir.2005).[2]
If giving the immigration court the wrong address were not enough, there were more facts supporting the IJ's conclusion that Mr. Mecaj thwarted the government’s good faith attempt at notice. Mr. Mecaj appeared at the November 20, 2003 hearing with his attorney. J.A. at 56. The only notice of that hearing, however, was sent to the address that Mr. Mecaj had provided for contact by the immigration court, which was Mr. Mecaj’s Waterford address. J.A. at 57 (Aug. 14, 2003 Notice of Hearing set for Nov. 20, 2003). If we believe Mr. Mecaj’s assertions that he was not living in Waterford at that time, the notice must have been forwarded to him by the postal service, given to him by other occupants, or sent to him in some other unusual fashion. All possible manners of delivery would draw one’s attention to the fact that this correspondence had not been sent to one’s current address. The form not only informed him of the date and time of the removal hearing, it also gave him these instructions regarding his address:
IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION COURT DETROIT, MI THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE ON THE ATTACHED FORM EOIR-33. ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM THE COURT WHERE YOU ARE SCHEDULED TO APPEAR. IN THE EVENT YOU ARE UNABLE TO OBTAIN A FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE “CHANGE OF ADDRESS.”
J.A. at 57 (Notice of Hearing in Removal Proceedings). An alien thwarts the government’s attempt to provide notice when that alien, through extraordinary means of delivery, has his attention drawn to the fact the government has an incorrect address on file, and yet the alien fails to *456 correct that address, despite being instructed to do so in capital letters. Indeed, Mr. Mecaj failed to correct his address even though a change of address form, Form EOIR-33, was provided to him with the first notice, even though he could have sent in a change of address on regular paper if he lost that form, and even though he in fact attended the hearing on November 20th and could have told the IJ or some other court personnel in person that his address on file was incorrect.
Unlike the majority, I do not believe that these facts provide “no evidence” that Mr. Mecaj thwarted the government’s good faith attempt to provide him notice of his rescheduled removal hearing. Indeed, the opposite is true; these facts are enough to find that Mr. Mecaj thwarted the government’s attempt at providing him notice. The government cannot know it has the wrong address on file, and the alien should be held accountable, when the government is using an address: (1) that was the last one provided by the alien to the immigration court; (2) that had apparently been successful in previously notifying the alien of a removal hearing because the alien had appeared for a hearing whose date was sent only to that address; and (3) that the alien never indicated was wrong or had changed, despite the fact that the government had repeatedly informed that alien that it was using that address. If it is true that Mr. Mecaj never received this notice, then it is surely true that he thwarted the government’s attempt to contact him because he gave the government the Waterford address to be used by the immigration court to contact him, he had previously responded to notices sent to Waterford, he was repeatedly made aware that the government believed him to live in Waterford and would be contacting him at the Waterford address, and yet he did not update or correct that address as the government requested and as mandated by statute. Even if the majority, in its own independent judgment, believes Mr. Mecaj made a “mere error or [was] careless[],” Maj. Op. at 452, I do not think that this belief is so borne out by the record to find that the IJ abused his discretion in ruling to the contrary. While the IJ could have chosen to grant Mr. Mecaj’s motion to reopen despite the above facts, it was not an abuse of discretion for the IJ to hold that Mr. Mecaj was not entitled to actual notice nor was it an abuse of discretion to hold in the alternative that Mr. Mecaj should be charged with constructive receipt for thwarting the government’s ability to provide him notice. I therefore respectfully dissent.

. He did not update it despite, as the majority admits, Maj. Op. at 450, being informed by the immigration court that he had provided the Waterford address and that the immigration court would continue to use it until Mr. Mecaj informed it of a different address.

. The majority notes its disagreement with an "expansive definition of" thwarting delivery of notice, which it believes other Circuits have adopted. Maj. Op. at 452. They seem to believe that these definitions are incorrect because an alien must have some sort of invidious intent to avoid notice before being charged with constructive receipt. Other Circuits’ definitions, however, were formulated in a manner consistent with the statute. 8 U.S.C. § 1229a(b)(5)(C) discusses the grounds an alien can prove when moving to reopen removal proceedings when the alien has been ordered removed in absentia. Mr. Mecaj was attempting to carry his burden under (C)(ii). That subsection requires Mr. Mecaj to "demonstrate[ ] that [he] did not receive notice ... [] and [demonstrate that] the failure to appear was through no fault of the alien." 8 U.S.C. § 1229a(b)(5)(C)(ii) (emphasis added). The majority wants to read out the requirement that Mr. Mecaj prove that it was not his fault that notice did not reach him, and instead require that he merely prove he had no invidious intent to avoid notice. While the majority does this because of the harsh consequences of deportation, it is Congress’s judgment that such consequences are required, and the statute ensures that the alien is repeatedly notified about the harsh consequences of failing to appear and failing to keep the government current on his address. See 8 U.S.C. § 1229(a)(l)(F)(iii), (a)(l)(G)(ii).