**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 10, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ANDRANIK AMIRYAN,

     Petitioner,

v.

PAMELA J. BONDI, United States
Attorney General,

     Respondent.

No. 25-9540
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

_____

Pro se Petitioner Andranik Amiryan seeks review of the Board of Immigration Appeals' (BIA) order denying his motion to reopen proceedings.[1]  Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the petition for review.[2]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Amiryan is proceeding pro se, we liberally construe his filings, but we "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[2] While the petition for review has been pending in this court, Amiryan has been removed from the United States.  His removal, however, does not moot the

## I.    Background

Amiryan, a native and citizen of Armenia, first entered the United States in 1997 as a lawful permanent resident.  A series of criminal convictions led to the revocation of Amiryan's status as a lawful permanent resident, and he was removed to Armenia in early 2008.  In late 2009, Amiryan unlawfully reentered the United States.  He was subsequently arrested, convicted of illegal reentry after having been deported, and sentenced to a fourteen-month term of imprisonment.  After serving his term of imprisonment, he was removed to Armenia again in early 2011.  By his own account, Amiryan illegally reentered the United States in May 2012.

In 2021, Amiryan pleaded guilty to conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349.  Following the conviction, the Department of Homeland Security reinstated his prior order of removal.  Amiryan then filed applications for withholding of removal and protection under the Convention Against Torture (CAT protection).  The immigration judge (IJ) held a hearing on the merits where Amiryan presented evidence of harm and threats of harm to him and his family.  Amiryan testified about his interactions with a well-known high-ranking member of a paramilitary group, that person's demands for money, and physical and

---

petition for review.  *See, e.g.*, *Addo v. Barr*, 982 F.3d 1263, 1268 n.4 (10th Cir. 2020) (observing that a petitioner's "removal has not mooted his petition for review because, in the event this court grants his petition, [Immigration and Customs Enforcement] would facilitate his return to the United States pursuant to its Facilitation of Return Policy." (internal quotations marks omitted)).

verbal intimidation during his time in Armenia in 2011. Amiryan's daughter testified about her visit to Armenia where individuals approached her and her brother inquiring about her father's removal proceedings. The individuals called Amiryan a "rat," inquired about his return to Armenia, and then physically assaulted them. Amiryan's brother also testified about a call he received from an unknown man on an unknown Russian number. The caller stated he knew Amiryan was in immigration custody and threatened to "cut his throat." R. vol. II at 598. Amiryan also testified about his fear of returning to Armenia based on his cooperation with United States law enforcement. He stated that he feared certain members of a paramilitary group and the Russian Mafia and that he distrusted the Armenian police's willingness to provide protection.

After the hearing, the IJ issued a written decision denying Amiryan's applications. Amiryan appealed, and the BIA affirmed the IJ's decision and dismissed the appeal. Amiryan then filed a petition for review in this court. On August 1, 2025, this court affirmed the BIA's decision and denied the petition for review. *See Amiryan v. Bondi*, No. 24-9564, 2025 WL 2181466, at *1 (10th Cir. Aug. 1, 2025) (unpublished).

During the pendency of Amiryan's petition in this court, Amiryan filed a motion to reopen his immigration proceedings with the BIA asserting changed country conditions that qualified him for withholding of removal and protection under the CAT. Amiryan presented new evidence that his brother-in-law was

3

physically attacked and verbally threatened in person and in a text message. He also surmised the attackers obtained a copy of his reasonable fear interview as he believes it was stolen by an Armenian man named Arman who was associated with Amiryan's 2020 arrest.

In March 2025, the BIA denied Amiryan's motion to reopen concluding it was untimely and Amiryan's claimed harm was a "continuation of the circumstances previously considered by the [IJ] and that, without more, do not establish a material change in country conditions in Armenia that support the reopening of proceedings for further consideration of his claim for withholding of removal" and CAT protection. *See* R. vol. I at 4. The BIA also concluded Amiryan did not demonstrate prima facie eligibility for withholding of removal or CAT protection.

This petition for review followed.

## II.    Discussion

Amiryan challenges the BIA's denial of his motion to reopen his case on several grounds. He asserts the BIA erred in concluding the motion was untimely and that his claim of changed country conditions and new evidence demonstrate he is prima facie eligible for withholding of removal and CAT protection.

This court reviews the denial of a motion to reopen immigration proceedings for abuse of discretion. *Maatougui v. Holder*, 738 F.3d 1230, 1239 (10th Cir. 2013). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains

only summary or conclusory statements." *Id.* (internal quotation marks omitted). We keep in mind motions to reopen are disfavored, and thus a petitioner bears a heavy burden to show the BIA abused its discretion. *Id.* So even when a petitioner presents new evidence, or a prima facie case for relief, the BIA has discretion to deny a motion to reopen so long as "its rationale is clear, there is no departure from established policies, and its statements are a correct interpretation of the law." *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004). This is true even when "the BIA's decision is succinct." *Id*.

A motion to reopen must "state the new facts that will be proven" and supply evidence to support them. 8 U.S.C. § 1229a(c)(7)(B). "The new facts [a petitioner] presents must demonstrate that if proceedings before the [IJ] were reopened . . . the new evidence offered would likely change the result in the case." *Maatougui*, 738 F.3d at 1240 (internal quotation marks omitted). The BIA may deny a motion to reopen on at least three different grounds: (1) the petitioner has failed to establish a prima facie case for the substantive relief sought; (2) the petitioner has failed to produce new material evidence that was previously unavailable, and (3) in the case of discretionary relief, the BIA may determine whether the petitioner would be entitled to the discretionary grant of relief. *INS v. Abudu*, 485 U.S. 94, 104-05 (1988).

**A. Timeliness of Motion to Reopen**

Amiryan argues the BIA erred by concluding his motion to reopen was untimely. Ordinarily, a motion to reopen must be filed within 90 days following the

final administrative decision.  8 C.F.R. § 1003.2(c)(2).  There is an exception to this deadline if the petitioner filed the motion to apply (or reapply) for withholding of removal and CAT protection under the changed country conditions exception. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).  The BIA concluded Amiryan's motion was untimely and that he did not demonstrate a material change in country conditions sufficient to support the changed country conditions exception.

Nevertheless, the BIA proceeded to analyze the merits of Amiryan's withholding of removal and CAT protection claims and concluded he did not establish prima facie eligibility for either type of relief.  Amiryan contends that the motion was timely filed and the BIA's reliance on the changed country conditions exception constituted legal error and materially affected its analysis by applying the wrong standard.

The BIA stated that Amiryan's motion, "filed on February 18, 2025, [was] untimely."  R. vol. I at 3.  But our review of the record shows the BIA misapprehended when Amiryan filed his motion to reopen.  *See id.* at 46, 60.  Even so, the BIA also denied the motion to reopen on the alternative grounds that Amiryan failed to demonstrate prima facie eligibility for either withholding of removal or CAT protection.  It is on these grounds we affirm the BIA and deny the petition for review. *See Abudu*, 485 U.S. at 104.[3]

---

[3] Amiryan challenges the BIA's determination that he did not present a material change in country conditions.  But because we affirm the BIA and deny the petition for review on the alternative grounds, we need not decide this issue.

**B. Withholding of Removal**

Amiryan contends that his new evidence establishes prima facie eligibility for withholding of removal. Mandatory withholding of removal to another country is available when an applicant's "life or freedom would be threatened in [the country of removal] because of the [applicant's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The term "particular social group" is not defined in the statute. *See Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015) ("Congress did not define the term 'particular social group' in the INA."). The BIA has interpreted the phrase to mean the group (1) shares "a common, immutable characteristic . . . beyond the power of an individual to change," (2) is defined with "particularity," meaning it "cannot be indeterminate[,] . . . too subjective, inchoate, and variable," and (3) is socially distinct, meaning it is "*perceived* as a group by society." *Id.* at 990-91 (internal quotation marks omitted).

The BIA concluded Amiryan did not demonstrate how his proposed particular social group "meets the general requirements of immutability, particularity, and social distinction to be cognizable . . ., his membership in the group, or that his claimed harm has a nexus to this ground." R. vol. I at 5. The BIA also concluded Amiryan did not sufficiently identify a political opinion, actual or imputed, that is motivating the people he fears to harm him.

Amiryan asserts he is eligible for withholding of removal based on his membership in a particular social group. Amiryan describes his particular social group as "Armenians whose sworn testimony against oligarchs becomes public." Pet'r's Opening Br. at 11 (internal quotation marks omitted). He contends this group consists of those who have testified against political elites "in a political climate where dissenters and informants are severely punished." *Id.* at 13. Although Amiryan submits evidence that he has been threatened, and his family members were attacked and threatened, in response to his testimony in immigration court and past cooperation with United States authorities, he does not provide evidence of shared characteristics that define the particular social group such that Armenian society would perceive it as a group. This court's precedent is clear that Amiryan must provide evidence that Armenians would perceive "Armenians whose sworn testimony against oligarchs that becomes public" as a distinct social group. *See Rodas-Orellana*, 780 F.3d at 992. Thus, he fails to show the BIA's conclusion was arbitrary, irrational, or contrary to law.

Amiryan also asserts he is prima facie eligible for removal based on his political opinion. He appears to argue that his membership in his proposed particular social group imputes a political opinion associated with retaliation for exposing corruption or abuse by political elites. But he does not explain, or provide evidence of, how the individuals he fears are motivated to harm him because of his actual or imputed political opinion. Motive is critical to establish the nexus between the harm

and protected ground. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992) (concluding that "since the statute makes motive critical, [an applicant] must provide some evidence of it" to establish a fear of persecution because of a political opinion (emphasis omitted)). Again, Amiryan fails to show the BIA's conclusion was arbitrary, irrational, or contrary to law.

### C. CAT Protection

Amiryan contends his new concrete evidence of the clear risk of torture with the Armenian government's acquiescence demonstrates he is prima facie eligible for CAT protection. Prima facie eligibility for CAT protection requires an applicant to prove "it is more likely than not that he would be tortured if removed to the proposed country of removal." *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1362 (10th Cir. 2019) (internal quotation marks omitted). "Torture is defined as any act by which severe pain or suffering . . . is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official." *Id.* (quoting 8 C.F.R. § 1208.18(a)(1)). A public official's acquiescence requires that "the public official, prior to the activity constituting torture, have awareness of such activity," and fail to intervene. 8 C.F.R. § 1208.18(a)(7). "[A]wareness requires a finding of either actual knowledge or willful blindness." *Id.*

The BIA succinctly concluded Amiryan's evidence of Armenian prison conditions and violence by police were insufficient to establish the need for CAT

protection. The BIA also concluded that past torture was not necessarily enough to demonstrate a high probability of particularized risk of future torture sufficient to invoke CAT protection. *See Niang v. Gonzales*, 422 F.3d 1187, 1202 (10th Cir. 2005) ("[U]nder the CAT a petitioner is not entitled to a presumption of future torture based on evidence of past torture; nor does a showing of past torture automatically render her CAT eligible.").

Amiryan contends he submitted evidence of "credible, individualized threats, including a violent attack on his brother-in-law by individuals who referenced [his] immigration testimony and called him a 'rat.'" Pet'r's Opening Br. at 14. He also contends that the public officials' failure to respond when his brother-in-law was attacked shows the assault happened with government acquiescence. Finally, he argues his country conditions evidence details "Armenia's persistent failure to prevent or investigate violence by politically connected individuals . . . against whistleblowers and perceived dissidents." *Id.* at 15.

We recognize Amiryan's brother-in-law suffered a horrible attack, and the text message is ominous. But Amiryan's evidence does not demonstrate a high probability that he will be tortured with the acquiescence of the Armenian government. And under this court's authority, generalized evidence of government corruption and unsuccessful policing is insufficient to show actual knowledge or willful blindness. *See, e.g.*, *Escobar-Hernandez*, 940 F.3d at 1362 ("[P]ervasive violence in an applicant's country generally is insufficient to demonstrate the

applicant is more likely than not to be tortured upon returning there.").  Thus, Amiryan fails to demonstrate the BIA acted arbitrarily, irrationally, or in a manner contrary to law in rejecting his CAT protection claim.

## III.    Conclusion

We conclude the BIA did not abuse its discretion and we deny the petition for review.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge